COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

TONY SARP,                                                       )

                                                                              )              No.  08-03-00114-CV

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
County Court at Law

LLOYD MCCONNELL d/b/a CACTUS
             )

CUSTOM KNIVES,                                             )             
of Ector County, Texas

                                                                              )

Appellee.                           )                 
(TC# CC-14,857)

                                                                              )

 

 

MEMORANDUM  OPINION

 

Texas resident
Lloyd McConnell d/b/a Cactus Custom Knives sued Washington resident Tony Sarp for failing to pay for $6,200 of custom knives.  The trial court denied Mr. Sarp=s
special appearance, and he filed this interlocutory appeal.  See Tex.Civ.Prac.&Rem.Code Ann. '
51.014(a)(7)(Vernon Supp. 2004).  He
brings four related issues, in which he asserts that the trial court erred in
denying the special appearance for lack of personal jurisdiction in Texas.  We affirm.








Mr. McConnell and
Mr. Sarp met at the Safari Club International Show in
Las Vegas, Nevada in 1998 and again at the same event in the following
years.  For years, Mr. McConnell has been
building custom knives.  Mr. McConnell
has regularly rented a booth at the Safari Club International Show in Las Vegas
to sell his knives.  At the 1999 Safari
Club International Show, Mr. McConnell and Mr. Sarp
made a deal where Mr. Sarp=s
business, Katmai Lodge Limited, would trade a fishing
trip to Alaska for two custom-built knives and a display case made by Mr. McConnell.  At the same 1999 show, Mr. Sarp also ordered another knife which would not be part of
the fishing trip trade.

According to Mr.
McConnell, he and Mr. Sarp discussed the design of
the display case and knives several times over the telephone.  Mr. McConnell would call Mr. Sarp at his Washington office to let him know the status of
the project and about having the display case made.  They also had discussions about the design
and placement of the scrimshaw carvings on the knife handles.  Mr. McConnell testified that he told Mr. Sarp where he lived and where he manufactured his goods,
which was in his shop in Odessa.  Mr.
McConnell delivered the knives at the Las Vegas show the following year.

Mr. McConnell made
reservations to go on the fishing trip, but had to cancel due to family
illness.  At some point, Mr. McConnell
wanted to take his wife along on the Alaska fishing trip and Mr. Sarp told him she could go. 
At the hearing, Mr. McConnell explained that he and Mr. Sarp had never discussed the dollar amount for the fishing
trip, but he later found out from a brochure Mr. Sarp
mailed him that the fishing trip was worth about $3,900.  Since his wife would be going, Mr. McConnell
decided to make Mr. Sarp another knife, to send as a
goodwill gesture for his accompanying wife. 
Mr. McConnell made a reservation for the Alaskan lodge, but a week or
two later he received a call from the Washington office informing him that he
could not go on the selected date because it was the prime fishing time of the
year and the lodge was booked up.








At the special
appearance hearing, Mr. McConnell testified that he sent Mr. Sarp invoices for the knives with the understanding that
Mr. Sarp would pay for the $2,200 knife and the
others were in exchange for the fishing trip. 
Mr. McConnell sent the following invoices:  (1) two knives and a display case in the
amount of $3,200 by invoice dated February 14, 2000; (2) one knife in the amount
of $2,200 by invoice dated March 17, 2000; and (3) one knife in the amount of
$800 by invoice dated May 15, 2000.  Mr. Sarp did not respond to the billing.  Mr. McConnell later received a letter from
Mr. Sarp on Katmai Lodge
letterhead dated August 18, 2000, stating that he never received a bill and
still wanted to do the trade as agreed. 
In the letter, Mr. Sarp requested that Mr.
McConnell rebill him for what he owed on the third
knife.  Mr. Sarp
also stated, AI
will send you a letter verifying the trade agreement amount, along with a check
for the third knife.@  Mr. McConnell testified that the letter
from Mr. Sarp was sent to his shop address in Odessa,
Texas.  By invoice dated September 12,
2000, Mr. McConnell sent out a duplicate invoice for the $2,200 knife.  The invoice notes Mr. McConnell=s mailing address in Odessa,
Texas.  Mr. McConnell testified that
he did not receive a check, a fishing trip, and does not have the knives.

Denial
of Special Appearance








Whether a court
has personal jurisdiction over a defendant is a question of law.  American Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 805-06 (Tex. 2002), citing,
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d
789, 794 (Tex. 2002).  On appeal,
the trial court=s order
granting or denying a special appearance is reviewed de novo, though in
doing so an appellate court may need to review the trial court=s resolution of disputed facts.  American Type Culture Collection, 83 S.W.3d at 806.  When the trial court does not issue findings of fact, as in this
case, we presume that the trial court resolved all factual disputes in favor of
its judgment.  See American
Type Culture Collection, 83 S.W.3d at 806.  When the appellate record includes the
reporter=s and
clerk=s
records, these implied findings are not conclusive and may be challenged for
legal and factual sufficiency.  BMC
Software, 83 S.W.3d at 795.  For legal sufficiency points, the no evidence
challenge fails if there is more than a scintilla of evidence to support the
finding.  Id.  In reviewing a factual sufficiency challenge,
we examine the entire record, both in favor of and contrary to the challenged
finding in determining whether the finding in question is so against the great
weight and preponderance of the evidence as to be clearly wrong and manifestly
unjust.  See Pool v.
Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Oechsner
v. Ameritrust Texas, N.A., 840 S.W.2d 131, 136 (Tex.App.--El Paso 1992, writ denied).

Texas courts may
exercise jurisdiction over a nonresident when: 
(1) the Texas long-arm statute authorizes jurisdiction; and (2) the
exercise of jurisdiction is consistent with federal and state constitutional
guarantees of due process.  See Tex.Civ.Prac.&Rem.Code Ann. ''
17.041-17.069 (Vernon 1997 & Supp. 2004); Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.
1991).  The long-arm statute authorizes
jurisdiction over a nonresident defendant Adoing
business@ in
Texas.[1]  See Tex.Civ.Prac.&Rem.Code Ann. '
17.042.  The Texas long-arm statute
reaches Aas far as
the federal constitutional requirements of due process will allow.@ 
Guardian Royal, 815 S.W.2d at 226.








Under the federal
constitutional requirements for due process, a nonresident defendant must have
established Aminimum
contacts@ with
Texas and if so, the exercise of jurisdiction must comport with Atraditional notions of fair play and
substantial justice.@  American Type Culture Collection,
83 S.W.3d at 806, citing, International Shoe Co. v. Washington,
326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1940).  Minimum contacts analysis requires that a
nonresident defendant purposefully avail itself of the privilege of conducting
activities within Texas, thus invoking the benefits and protections of our
laws.  Id., citing,
Burger King Corp. v. Rudzewicz, 471
U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528
(1985).  The goal of the Apurposefully avail@ requirement is to protect a
nonresident defendant from being haled into a jurisdiction based on random,
fortuitous, or attenuated contacts or the unilateral acts of another
party.  See id.; Guardian Royal,
815 S.W.2d at 226.  A
nonresident defendant=s
activities, whether through direct acts within Texas or conduct outside
of Texas, must justify a conclusion that the defendant could reasonably
anticipate being called into a Texas court. 
American Type Culture Collection, 83 S.W.3d at
801, citing, World-Wide Volkswagen Corp. v. Woodson, 444 U.S.
286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).








A defendant=s contacts with a forum can give rise
to either specific or general jurisdiction. 
American Type Culture Collection, 83 S.W.3d at
806.  Specific jurisdiction is
established if (1) the defendant=s
contacts with the forum is purposeful, and (2) the
cause of action arises from or is related to those contacts.  Id.; BMC Software, 83 S.W.3d at 796. 
When specific jurisdiction is asserted, our minimum contacts analysis
must focus on the relationship between the defendant, the state of Texas, and
the litigation.  See Guardian Royal,
815 S.W.2d at 228; Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990).  In contrast, general jurisdiction is present
a defendant=s
contacts with Texas are continuous and systematic, permitting the exercise of
personal jurisdiction over the defendant even if the cause of action did not
arise from or relate to activities conducted within Texas.  CSR Ltd. v. Link,
925 S.W.2d 591, 595 (Tex. 1996). 
General jurisdiction requires a showing of substantial activities within
Texas, a more demanding minimum contacts analysis than specific
jurisdiction.  Id.; American
Type Culture Collection, 83 S.W.3d at 807. 

The plaintiff
bears the initial burden of pleading facts sufficient to bring a nonresident
defendant within the provisions of the Texas long-arm statute.  See McKanna
v. Edgar, 388 S.W.2d 927, 930 (Tex. 1965); Hotel Partners v. KPMG Peat
Marwick, 847 S.W.2d 630, 633 (Tex.App.--Dallas
1993, writ denied).  A defendant
may contest the Texas court=s
personal jurisdiction over it by filing a special appearance.[2]  See Tex.R.Civ.P. 120a(1).  Upon filing a special appearance, the
defendant must negate all personal jurisdiction bases alleged by the
plaintiff.  Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).








In Issue One, Mr. Sarp argues that Mr. McConnell in his original petition
made no allegations that would bring him within the Texas long-arm
statute.  In his petition,
Mr. McConnell pleaded that he was a resident of Texas and Mr. Sarp was an individual who may be served in Washington state.  According to
the pleadings, Mr. Sarp purchased certain goods,
services, wares, equipment, and/or merchandise from Mr. McConnell in Texas as
evidenced by attached invoices.  Mr.
McConnell demanded payment from Mr. Sarp for the sums
due, but has not been paid in full as agreed upon by Mr. Sarp.  While Mr. McConnell did not specifically
state that Mr. Sarp was subject to the Texas long-arm
statute under Section 17.042 of the Texas Civil Practice and Remedies Code, he
pled sufficient facts to bring Mr. Sarp under the
long-arm statute.  See Kawasaki Steel
Corp., 669 S.W.2d at 203 (nonresident defendant may not contest curable
defective jurisdictional allegations in the petition in a special
appearance).  Issue One is overruled.

In Issues Two and
Three, Mr. Sarp contends the trial court erred
because Texas does not have general nor specific jurisdiction over him.  Because Mr. McConnell pled sufficient facts,
the burden shifted to Mr. Sarp to negate all possible
bases for personal jurisdiction.  See
id. at 203. 
In his brief, Mr. Sarp points out that:  (1) all in-person contact between him and Mr.
McConnell occurred in Las Vegas, Nevada; (2) the only telephone calls between
them were placed by Mr. McConnell; (3) the August 18, 2000 letter is on
the letterhead of the corporation Katmai Lodge, Ltd.;
and (4) he is not a resident of Texas and does not engage in business in
Texas.  Mr. Sarp
asserts that the alleged contract was between Katmai
Lodge, Ltd. and Mr. McConnell and was made in Las Vegas, Nevada.  Without admitting the existence of a contract
between him individually and Mr. McConnell, Mr. Sarp
argues that such a contract would have been made in Nevada.








After reviewing
the record, we conclude there is sufficient evidence to support the trial court=s implied finding that Mr. Sarp=s
conduct outside of Texas was purposefully directed to Texas such that he could
reasonably anticipate being called into a Texas court.  In this case, Mr. Sarp
and Mr. McConnell agreed to an exchange of custom knives for a fishing trip in
Alaska furnished by Mr. Sarp=s
business, Katmai Lodge Ltd.  By telephone, the parties discussed the
design of the display case and knives. 
Mr. McConnell testified that he told Mr. Sarp
where he lived and where he manufactured his goods.  By letter dated August 18, 2000, Mr. Sarp requested that Mr. McConnell rebill
him for the amount due on one of the custom knives.  Mr. Sarp also
stated that he would send a letter verifying the trade agreement with his
payment for the custom knife.  Mr.
McConnell testified that he received the August 2000 letter at his mailing
address in Odessa, Texas.  For purposes
of the long-arm statute, these facts support the allegation that a contract had
been formed by the parties, in which Mr. McConnell was to perform part of the
contract in Texas in accordance with Mr. Sarp=s requests.[3]  See Tex.Civ.Prac.&Rem.Code Ann. '
17.042(1).  Mr. McConnell brought a cause
of action for default in payment for the custom knives purchased by Mr. Sarp.  Specific
jurisdiction was established in that Mr. Sarp=s contacts with Texas were purposeful
and Mr. McConnell=s cause
of action is directly related to these contacts.  We conclude that Mr. Sarp
failed to negate specific jurisdiction as a basis for jurisdiction over him in
this cause.  Issues Two and Three are
overruled.








Having concluded
that Mr. Sarp purposefully established minimum
contacts with Texas, we must also determine whether the assertion of personal
jurisdiction over Mr. Sarp comports with traditional
notions of fair play and substance justice. 
See Guardian Royal, 815 S.W.2d at 228.  In deciding this issue, we consider the
following factors when appropriate:  (1)
the burden on the defendant; (2) the interests of the forum state in adjudicating
the dispute; (3) the plaintiff's interest in obtaining convenient and effective
relief; (4) the interstate judicial system=s
interest in obtaining the most efficient resolution of controversies; and (5)
the shared interest of the several states in furthering fundamental substantive
social policies.  Guardian Royal, 815 S.W.2d at 231.  We
are mindful, however, that only in rare cases will the exercise of jurisdiction
not comport with fair play and substantial justice when the nonresident
defendant has purposefully established minimum contacts with the forum
state.  Id.  It is incumbent upon the defendant to present
Aa compelling case that the presence of
some other considerations would render jurisdiction unreasonable.@ 
Id., quoting, Burger King, 471
U.S. at 477, 105 S.Ct. at 2185.

In his fourth
issue, Mr. Sarp argues that his burden of litigating
in Texas is considerable because he is a resident of Washington state and
president of Katmai Lodge, Ltd. in Alaska.  Distance alone is not ordinarily sufficient
to defeat jurisdiction.  Guardian
Royal, 815 S.W.2d at 231.  A[M]odern transportation and communication have made it much
less burdensome for a party sued to defend himself in a State where he engages
in economic activity.@  Id., quoting,
McGee v. Int=l
Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199,
201, 2 L.Ed.2d 223, 226 (1957). 
Requiring Mr. Sarp to defend a suit in
Texas does not appear overly burdensome, particularly considering the fact that
a trial in Nevada would likewise present a burden for Mr. Sarp.  We find that this factor weighs in favor of
Texas.

Mr. Sarp also argues that Texas=
interest in adjudicating the matter is tenuous because the alleged contract was
formed in Nevada and allegedly breached in Washington.  As discussed above, the alleged contract
between the parties was to be partly performed in Texas and Mr. McConnell
testified that Mr. Sarp corresponded about their
trade agreement and about billing for the merchandise ordered to Mr. McConnell
who was in Texas.  We find that Texas has
a strong interest in adjudicating this breach of contract dispute.








Further, Mr. Sarp contends Mr. McConnell=s
interest in litigating in Texas does not weigh heavily in the balance, since he
should expect to prosecute his claim in either Nevada or Washington, while Mr. Sarp could not have foreseen being haled into a Texas court
to defend an alleged contract he did not enter as an individual.  As discussed above, Mr. McConnell=s claims arise out of or are related to
Mr. Sarp=s
conduct, which was purposefully directed to Texas.  Mr. McConnell offered unchallenged
testimony that indicated Mr. Sarp knew that he was
conducting business with a resident of Texas, ordered merchandise to be
manufactured at Mr. McConnell=s
shop in Texas, and corresponded with Mr. McConnell through his mailing address
in Texas.  Mr. Sarp
has failed to make a compelling case that exercise of personal jurisdiction in
this case would be unreasonable.  See
Guardian Royal, 815 S.W.2d at 231. 
Based on the facts in evidence, we find that Mr. McConnell=s interest in obtaining convenient and
effective relief outweighs the burden on Mr. Sarp in
having to defend himself in Texas.  After
carefully considering all relevant factors, we conclude that exercise of
personal jurisdiction over Mr. Sarp comports with
traditional notions of fair play and substantial justice.  Issue Four is overruled.

We affirm the
trial court=s order
denying the special appearance.  

 

 

 

February 5, 2004

DAVID WELLINGTON CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.











[1]
In pertinent part, Section 17.042 provides that a nonresident Adoing business@
in Texas where it Acontracts
by mail or otherwise with a Texas resident and either party is to perform the
contract in whole or in part in this state . . . .@  See Tex.Civ.Prac.&Rem.Code Ann. ' 17.042(1).





[2]
Rule 120a(3) of the Texas Rules of Civil Procedure provides that the trial
court Ashall
determine the special appearance on the basis of the pleadings, any
stipulations made by and between the parties, such affidavits and attachments
as may be filed by the parties, the results of the discovery processes, and any
oral testimony.@  Tex.R.Civ.P.
120a(3).  





[3]
In deciding this case, we do not consider the merits of the parties= claims regarding the existence of a
contract between the parties, but rather limit our examination to the
jurisdictional question at issue.  See
e.g., Zac Smith & Co., Inc. v. Otis
Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987), cert. denied, 484
U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988)(question of jurisdiction does not reach substantive merit
of alleged breach claim).