**AMERICAN TYPE CULTURE COLLECTION, INC.,**
Petitioner,

v.

**Marshall COLEMAN, et al., Respondents.**

No. 00–0959.

Supreme Court of Texas.

Argued on Feb. 13, 2002.

Decided July 3, 2002.

Rehearing Denied Sept. 12, 2002.

Randy Edward Moore, The Moore Law Firm, Angleton, Samuel M. Sipe, Jr., Steptoe & Johnson, Washington, DC, Gordon R. Pate, Joe Michael Dodson, Pate and Dodson, Beaumont, for Petitioner.

H. Ronald Welsh, Thad T. Dameris, Vinson & Elkins, William Key Wilde, Tracie J. Renfroe, Michael Vincent Young, Bracewell & Patterson, J. Palmer Hutcheson, Gardere Wynne Sewell & Riggs, Kenneth Tekell, Tekell Book Matthews & Limmer, John T. McDowell, McDowell Collmer, Francis I. Spagnoletti, Spagnoletti & Associates, Timothy F. Lee, Ware Snow Fogel

& Jackson, LLP, H. Daniel Spain, Melanie Virginia Waggoner, Spain & Hastings, Kathy D. Patrick, Gibbs & Bruns, Tom Bayko, Bayko Gibson Carnegie Hagan Schoonmaker & Meyer, Ronald E. Cook, Cook & Roach, Andrew R. Harvin, Doyle Rider Restrepo Harvin & Robbins, L.T. "Butch" Bradt, L.T. Bradt, P.C., Marc A. Sheiness, Sheiness Scott, et al., Otway B. Denny, Jr., Samuel E. Stubbs, Fullbright & Jaworski, C. Ed Harrell, Hughes, Watters & Askanase, John G. Bissell, John W. Bridger, Strong Pipkin Nelson Bissell & Ledyard, John A. Irvine, Porter & Hedges, Murray Fogler, McDade Fogler Maines, Phillip Dye, Jr., Vinson & Elkins, Peter E. Strand, James T. Liston, Jerry Von Sternberg, Gary R. Proctor, Karan Cummings Ciotti, Houston, John R. Gilbert, Gilbert & Moore, Angleton, Stephen R. Lewis, Jr., Lewis & Williams, Galveston, James E. (Buster) Brown, Law Offices of James E. "Buster" Brown, Vaughan O. Stewart, Lake Jackson, John Arthur Eaves, Jackson, MS, Carlos Garza, Texas City, Brian J. Hurst, Mark D. Taylor, Baker & McKenzie, Jerald Michael Rasansky, Dallas, Mitchell A. Toups, Steven ·C. Toups, Weller Green Toups & Terrell, Beaumont, Andrew Robert Spector, Miami, FL, for Respondent.

Justice JEFFERSON delivered the opinion of the Court.

The issue in this interlocutory appeal is whether a Texas court may, consistent with due process, exercise *in personam* jurisdiction over American Type Culture Collection ("ATCC") in this case. The trial court found that ATCC had sufficient minimum contacts with Texas to justify the exercise of personal jurisdiction. The court of appeals agreed and affirmed the trial court's judgment. 26 S.W.3d 37. We granted ATCC's petition for review to consider whether the trial court erred in denying ATCC's special appearance. We re-

verse the court of appeals' judgment and render judgment dismissing the case against ATCC for lack of personal jurisdiction.

## I.

ATCC, a nonprofit research organization, serves as a long-term repository center for living microorganisms, viruses, and cell lines. ATCC also sells biological research material to research institutes and commercial manufacturers throughout the United States and in forty-five countries.

In 1994, Marshall Coleman and approximately 1,800 veterans of the Persian Gulf War sued ATCC and eighty-two other defendants alleging that the defendants sold material, equipment, and technology to Iraq that was used to create biological and chemical weapons. They brought a class action in Brazoria County for products liability and negligence, contending they were harmed by exposure to those pathogens.

The defendants removed the case ·to federal court, which dismissed for lack of subject-matter jurisdiction. *Coleman v. Alcolac,* 888 F.Supp. 1388, 1404 (S.D.Tex. 1995) (order granting motion to dismiss for lack of subject-matter jurisdiction and remanding cause to state court). Upon remand, ATCC filed a special appearance under Texas Rule of Civil Procedure 120a, challenging personal jurisdiction. The trial court heard arguments relating to the motion in 1995 and denied ATCC's special appearance three years later.

The court of appeals affirmed, holding that jurisdiction was proper because ATCC's Texas sales were "numerous and repetitive." 26 S.W.3d at 49. The court noted that while ATCC's Texas sales represented "only about 3.5 percent of its worldwide business," ATCC had not directed the court to evidence comparing its

Texas sales volume to its sales volume in the forty-five other countries in which it sold products. *Id.* at 46. The court stated:

> Such a comparison ... would have gone to whether ATCC could reasonably have anticipated being sued in Texas. Moreover, if Texas was ATCC's sixth biggest U.S. sales market despite generating only five percent of all ATCC's U.S. business, the trial judge could have reasonably inferred most jurisdictions, foreign or otherwise, generated a very low percentage of ATCC's overall business. Therefore, the trial judge could also have reasonably inferred the 3.5–percent figure was not insignificant.

*Id.* The court also observed that ATCC did not present comparative-sales evidence regarding its Maryland site which served as a patent-repository for Texas residents. *Id.* at 47. The court found it significant that "ATCC [did] not state ... whether 2.7 percent [of its repository business over a twenty-year period] was a high or low figure compared to its repository business in other states or countries." *Id.*

ATCC petitioned for rehearing *en banc,* which the court of appeals denied. *Id.* at 53. Although the judgment of the court of appeals is normally conclusive for interlocutory appeals, we may exercise jurisdiction if the justices of the court of appeals disagree on a question of law material to the decision. TEX. GOV'T CODE § 22.225(b)(4), (c). Justice O'Connor, who did not sit on the original panel deciding the case, dissented from the denial of the petition for *en banc* rehearing. 26 S.W.3d at 53. We granted ATCC's petition for review to consider whether the trial court erred in denying ATCC's special appearance.

this interlocutory appeal. ATCC alleges that we have jurisdiction under Texas Government Code sections 22.001(a)(1) and 22.225(c). Specifically, ATCC contends this Court has jurisdiction because Justice O'Connor dissented from the denial of *en banc* review. The question is whether, in this case, "the justices of the court[ ] of appeals disagree[d] on a question of law material to the decision." TEX. GOV'T CODE §§ 22.001(a)(1), 22.225(c).

In dissenting to the court of appeals' denial of *en banc* review, Justice O'Connor challenged concepts fundamental to the court of appeals' holding. She criticized the panel for creating the concept of "comparative personal jurisdiction." 26 S.W.3d at 53. Disagreeing with the court's jurisdictional analysis pertaining to sales in other states, Justice O'Connor wrote that "[e]vidence showing sales were low in other states, as compared to sales in Texas, should not be a factor to be considered in special appearance cases." *Id.* at 53–54. In her view, the facts upon which the panel found personal jurisdiction were "extremely weak." *Id.* at 53.

Because Justice O'Connor's dissent addressed the merits of the panel's decision and disagreed expressly with a question of law material to the decision, we have jurisdiction to decide this case. Our jurisdiction is based not on the bare fact that a justice dissented from *en banc* review, but on the direct clash between the justice and the court on the appropriate analysis for the case. Having determined that we have jurisdiction to decide this case, we now turn to the issue before us—whether a Texas court may exercise personal jurisdiction over ATCC consistent with due process requirements in this case.

## II.

■ We must first determine whether we have subject-matter jurisdiction over

## III.

■ Whether a court has personal jurisdiction over a defendant is a question

of law. *BMC Software v. Marchand,* 83 S.W.3d 789 (Tex.2002). But in resolving this question of law, a trial court must frequently resolve questions of fact. *Id.* at 794. On appeal, the trial court's determination to grant or deny a special appearance is subject to *de novo* review, but appellate courts may be called upon to review the trial court's resolution of a factual dispute. *Id.* at 794. When the trial court does not issue findings of fact, reviewing courts should presume that the trial court resolved all factual disputes in favor of its judgment. *Id.* at 795. Here, the relevant facts are generally not disputed.

■■■ Texas courts may assert personal jurisdiction over a' nonresident defendant only if the Texas long-arm statute authorizes jurisdiction and the exercise of jurisdiction is consistent with federal and state due process standards. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). The Texas long-arm statute reaches "as far as the federal constitutional requirements of due process will allow." *Id.* Thus, the Texas long-arm statute requirements are satisfied if exercising jurisdiction comports with federal due process limitations. *Id.* We rely on precedent from the United States Supreme Court as well as our own state's decisions in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction. *BMC Software,* 83 S.W.3d at 795.

■■■ Under the Due Process Clause of the Fourteenth Amendment, jurisdiction is proper if a nonresident defendant established "minimum contacts" with Texas and maintenance of the suit does not · offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1940). The purpose of the minimum-contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). Accordingly, we focus upon the defendant's activities and expectations in deciding whether it is proper to call it before a Texas court. *Id.*

■■■ The minimum-contacts analysis requires that a defendant "purposefully avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A defendant is not subject to jurisdiction here if its Texas contacts are random, fortuitous, or attenuated. *See Guardian,* 815 S.W.2d at 226. Nor can a defendant be haled into a Texas court for the unilateral acts of a third party. *Id.* It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis. *Id.* at 230 n. 11.

■■■ A defendant's contacts with a forum can give rise to either specific or general jurisdiction. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts. *Id.* at 227. General jurisdiction, which the plaintiffs assert here, on the other hand, allows a forum to exercise

jurisdiction over a defendant even if the cause of action did not arise from or relate to a defendant's contacts with the forum. *Id.* at 228. General jurisdiction is present when a defendant's contacts with a forum are "continuous and systematic," a more demanding minimum-contacts analysis than specific jurisdiction. *Id.*

The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the long-arm statute. *McKanna v. Edgar,* 388 S.W.2d 927, 930 (Tex.1965). But upon filing a special appearance, the nonresident defendant assumes the burden to negate all the bases of personal jurisdiction alleged by the plaintiff. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985). Because Coleman alleges that general personal jurisdiction exists, we examine whether ATCC met its burden of establishing that its contacts with Texas were not continuous and systematic. The pertinent jurisdictional facts are set out below.

### IV.

ATCC is organized under District of Columbia laws and its principal place of business is Rockville, Maryland. ATCC advertises in national and international journals and its catalogues are sent only upon request. The majority of its sales are made by phone or written orders received in Maryland and are sent free-on-board ("F.O.B.") Rockville, Maryland. Title to the goods passes to buyers in Maryland. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996); *see also* 10 WILLISTON ON CONTRACTS, § 1079A, at 94 n. 6 (3d ed. 1967) (Free on Board "means that title to property passes from the seller to buyer at the designated FOB point."). ATCC invoices all of its sales and receives all payments in Maryland.

ATCC is not authorized to do business in Texas and does not have offices, distributors, employees, real property, or telephone listings in Texas. ATCC is not required to and does not have a registered agent in Texas. It does not make unsolicited mailings to Texas customers, it does not recruit employees in Texas, and it does not advertise in Texas journals. Nevertheless, the record reveals that ATCC has had contacts with Texas. We examine these contacts to determine whether they are "continuous and systematic."

### V.

ATCC has sold its products to Texas residents for at least eighteen years. At the commencement of this suit, ATCC's Texas sales accounted for 3.5 percent of its total annual sales and five percent of its total U.S. sales, generating approximately $350,000 in revenue. Although Coleman argues to the contrary, the record establishes ATCC's contention that the sales were shipped F.O.B. from Rockville, Maryland.

In addition to selling goods to Texas residents, ATCC also serves as a repository for Texas researchers seeking microorganism patents. For the fifteen to twenty-year period before this suit, nearly 2.7 percent of the 13,000 patents in ATCC's Maryland repository came from Texas residents. In connection with these services, interested customers shipped their materials to Maryland and entered into customer safe-deposit agreements. All the services related to the safe-deposit agreements were performed by ATCC in Maryland.

Similarly, in 1991, ATCC contracted with the University of Texas Southwestern Medical Center to propagate and test cell-lines. The contract was signed by ATCC in Maryland. And like its other agreements with Texas residents, ATCC per-

formed all the services related to the contract in Maryland.

Over a five-year period, ATCC purchased approximately $378,000 of supplies from thirty-three Texas vendors. Some of the goods were sent F.O.B. from Texas. And from 1987 to 1994, ATCC representatives attended five scientific conferences in Texas. At four conferences, ATCC had an exhibit booth and distributed corporate publications.

## VI.

■■■ The court of appeals stated that ATCC's volume of Texas sales was the "bedrock" fact that supported jurisdiction. 26 S.W.3d at 53. We disagree. In *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (5th Cir.1987), the Fifth Circuit discounted the fact that Beech Aircraft sold over $72 million of airframe assemblies to a Texas company because the goods were delivered "F.O.B. Wichita." The court stated:

> [ ] Beech exercised its right to structure its affairs in a manner calculated to shield it from the general jurisdiction of the courts of other states such as Texas, carefully requiring the negotiation, completion, and performance of all contracts in Kansas. Beech has not afforded itself the benefits and protections of the laws of Texas, but instead has calculatedly avoided them.... We are not aware that other courts have disregarded the structure of transactions in support of general jurisdiction. And, we have held such 'technicalities' relevant in analyzing general personal jurisdiction questions.

*Id.* at 375–76. We are persuaded by this analysis. General jurisdiction is premised on the notion of consent. That is, by invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there. When a nonresident defendant purposefully structures transactions to avoid the benefits and protections of a forum's laws, the legal fiction of consent no longer applies. Thus, title passing outside of Texas is a factor that weighs against a finding that Texas has general jurisdiction over a nonresident defendant such as ATCC. As a result, ATCC's Texas sales cannot properly be characterized as a "bedrock" fact that supports jurisdiction.

■■■ ATCC contends that its purchases from Texas vendors "do not provide evidence warranting the exercise of general jurisdiction over ATCC." We agree. In *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 418, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the United States Supreme Court stated that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." And the Fifth Circuit has stated, "purchases and trips related thereto, even if they occur regularly, are not, standing alone, a sufficient basis for the assertion of jurisdiction." *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1362 n. 3 (5th Cir. 1990). Accordingly, ATCC's purchases from Texas vendors will not alone support the exercise of general jurisdiction.

■■■ Moreover, because ATCC signed and performed in Maryland its repository contracts and its contract with the University of Texas Southwestern Medical Center, those contracts do not support a finding of general jurisdiction. *Cf. U–Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 763 (Tex.1977) ("[The defendant's] contacts with Texas were not grounded on any expectation or necessity of invoking the benefits and protections of Texas law, nor were they designed to result in profit from a business transaction undertaken in Texas. The contract was solicited, negotiated, and consummated in Oklahoma, and [the

defendant] did nothing to indicate or to support an inference of any purpose to exercise the privilege of doing business in Texas."). Similarly, ATCC's attendance at the five Texas conferences does not support the exercise of general jurisdiction. The record reflects that the scientific community, not ATCC, selected the conference locations. *See National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995) (no general jurisdiction where non-resident association sent an association representative to a national conference in Texas).

■ However, for general jurisdictional purposes, we do not view each contact in isolation. All contacts must be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 359 (Tex.1990). Thus, we must determine whether ATCC's contacts establish a pattern of continuing and systematic activity.

Two United States Supreme Court decisions discussing general jurisdiction are *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), and *Helicopteros*. In *Perkins*, the president and general manager of a Philippine mining corporation kept his office and company files in Ohio during the Japanese occupation of the Philippine Islands. 342 U.S. at 448, 72 S.Ct. 413. The president conducted the corporation's activities from Ohio. He held directors' meetings in Ohio, deposited corporate funds in two Ohio bank accounts, carried on corporate correspondence from his Ohio office, engaged an Ohio office to act as the corporation's transfer agent, and supervised the rehabilitation of the corporation's Philippine properties from Ohio. *Id.* The foreign corporation, through its president, "ha[d] been carrying on in Ohio a continuous and systematic, but limited, part of its general

business." *Id.* at 438, 72 S.Ct. 413. Under these facts, the Supreme Court concluded that the exercise of general jurisdiction by an Ohio court was reasonable. *Id.*

The Court in *Helicopteros*, analyzing facts somewhat similar to those presented here, concluded there was no basis for the assertion of personal jurisdiction. In that case, Helicol, a helicopter company from Colombia, contracted to provide helicopter services in Peru. 466 U.S. at 410, 104 S.Ct. 1868. Four United States citizens were killed in a helicopter crash in Peru. *Id.* Their representatives filed suit against Helicol in Texas. *Id.* at 412, 104 S.Ct. 1868. Helicol filed a motion to dismiss for lack of personal jurisdiction. *Id.* The motion was denied and ultimately the Supreme Court granted *certiorari* to determine whether a Texas court could lawfully exercise general jurisdiction over Helicol. *Id.*

The Court found Helicol's contacts with Texas insufficient to support the exercise of general jurisdiction, even though Helicol had ventured to Texas and negotiated a contract for transportation in Texas, purchased approximately eighty percent of its helicopter fleet (worth over $4 million) and other related equipment from Texas vendors at regular intervals, and had sent pilots and other personnel to Texas for training. *Id.* at 411, 104 S.Ct. 1868. The Court concluded that these contacts did not constitute the kind of "continuous and systematic general business contacts the Court found to exist in *Perkins*." *Id.* at 416, 104 S.Ct. 1868.

■ The facts before us are more closely aligned with *Helicopteros* than *Perkins*. Although the quantity of ATCC's contacts may suggest that ATCC had a significant relationship with Texas, we are not concerned with the quantity of contacts. Instead, we must look to the quality

of those contacts. And in this case, we are not persuaded that the quality of ATCC's contacts support general jurisdiction as defined by the United States Supreme Court. ATCC does not advertise in Texas, has no physical presence in Texas, performs all its business services outside Texas, and carefully constructs its contracts to ensure it does not benefit from Texas laws. *See CSR Ltd.*, 925 S.W.2d at 595 (nonresident defendant did not have continuous and systematic contacts with Texas where the defendant: had no offices, employees, or bank accounts in Texas; had not solicited business in Texas; never owned property and never paid taxes in Texas; and never entered into a contract in Texas). Under these circumstances, we must conclude that ATCC's contacts with Texas were not continuous and systematic.

The court of appeals stated that adopting ATCC's position would "result in virtually a per se rule preventing general personal jurisdiction over mail-order companies in any state but where they are headquartered." 26 S.W.3d 37, 52. We are not announcing a new per se rule. What constitutes continuous and systematic contacts can only be determined on a case-by-case basis. The United States Supreme Court has provided the guidelines for such evaluations, which we have applied in reaching our conclusion. If the particular facts demonstrate that a mail-order company's contacts with Texas are not continuous and systematic, the exercise of personal jurisdiction is constitutionally prohibited.

In making this determination, a trial court is bound by the facts and evidence before it. Rather than the quantity of contacts with Texas as compared to other jurisdictions, we look to the nature and quality of those contacts. Thus, "[w]hether a defendant is involved in commerce in another state to a greater or lesser extent than in Texas should have no bearing on whether that defendant has subjected itself to the jurisdiction of Texas courts." *Id.* at 54 (Justice O'Connor dissenting).

## VII.

In sum, because ATCC did not have sufficient minimum contacts with Texas, it is not subject to *in personam* jurisdiction. Accordingly, we reverse the court of appeals' judgment and render judgment dismissing the case against ATCC for lack of personal jurisdiction.

Justice RODRIGUEZ did not participate in the decision.