Opinion issued June 17, 2004










                                              
In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01311-CV




MONDIAL, INC. D/B/A HEMPSTEAD TRUCK STOP, Appellant

V.

ALFRED KARCHER, GmbH & CO., Appellee




On Appeal from the 215th District Court
Harris County, TexasTrial Court Cause No. 2003-19301




MEMORANDUM OPINION

          Appellant, Mondial, Inc. d/b/a Hempstead Truck Stop (“Mondial), sued
appellee, Alfred Karcher, GmbH and Company (“Karcher”), and three other
defendants


 for damages arising out of Mondial’s purchase of a carwash
manufactured by Karcher. The trial court dismissed Karcher upon Karcher’s special
appearance, and Mondial appealed. See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(7) (Vernon 1997) (allowing for interlocutory appeal from ruling on special
appearance); Tex. R. Civ. P. 120a (providing for special appearance to challenge
personal jurisdiction). We determine whether a Texas court may exercise specific
personal jurisdiction over Karcher. Answering the question in the negative, we affirm
the trial court’s order.
Standard of Review
          “Whether a court has personal jurisdiction over a defendant is a question of
law.” Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 805-06 (Tex.
2002), cert. denied, 123 S. Ct. 1271 (2003). However, “in resolving this question of
law, a trial court must frequently resolve questions of fact.” Id. at 806. “If a trial
court enters an order denying a special appearance, and the trial court issues findings
of fact and conclusions of law, the appellant may challenge the fact findings on legal
and factual sufficiency grounds.” BMC Software Belg., N.V. v. Marchand, 83 S.W.3d
789, 794 (Tex. 2002). Here, the trial court filed original and supplemental fact
findings and legal conclusions. Mondial challenges only the trial court’s legal
conclusions, not its fact findings. “When findings of fact are filed and are
unchallenged, . . . they occupy the same position and are entitled to the same weight
as the verdict of a jury. They are binding on an appellate court unless the contrary is
established as a matter of law, or if there is no evidence to support the finding.” 
McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986). We review legal
conclusions de novo for their correctness, rather than for legal or factual sufficiency. 
See id.
Background
          The following background facts come from the trial court’s unchallenged fact
findings and the record supporting them.
          Karcher manufactures carwashes and carwash products. Karcher (1) was a
German corporation that was not a Texas resident; (2) had no registered agent for
service in Texas and no business place, employees, servants, or agents within Texas;
(3) never transacted any business or held any trade shows within Texas; (4) had no
direct Texas customers; (5) had no bank accounts, telephone or fax numbers,
property, or investments in Texas; and (6) had never directly advertised its carwashes
in the United States and did not directly market its products in Texas.
 
          Mondial was a Texas corporation that needed a carwash for a truckstop that it
was building in Texas. Defendant Alpha Solutions, Inc. (“Alpha”), not a party to this
interlocutory appeal, approached Mondial about Mondial’s purchasing a Karcher
carwash. Alpha was not an agent, subsidiary, partner, or joint venturer with Karcher,
and Karcher had never had any business relationship with Alpha. 
          Alpha introduced Mondial to Karcher’s independent importer, Integrated
Cleaning Systems, Inc. (“ICS”), another defendant that is not a party to this appeal. 
ICS was based in Florida. Rather than selling its carwash products directly to anyone
in the United States, Karcher would sell its products to ICS. ICS would then
independently market Karcher’s products in the United States. Karcher had no
control over its products’ distribution after ICS sold them. ICS was not a partner,
agent, subsidiary, or joint venturer with Karcher.
          Mondial eventually entered into a lease agreement with Deutsch Financial
Services Corporation (“DFS”), which is no longer a party to this litigation, through
which DFS financed Mondial’s purchase of the Karcher carwash (“the carwash
lease”). Karcher was not a signatory to the carwash lease. In fact, Mondial dealt
solely with Alpha, ICS, and DFS in the purchase of the carwash; Mondial’s
representatives did not speak with Karcher’s representatives until after the carwash’s
purchase; and Karcher made no representations to Mondial before or during the
carwash sale.
          In January 2001, DFS (from Missouri) wrote to Karcher (in Germany),
requesting that Karcher guarantee the carwash lease between DFS and Mondial. The
letter identified Mondial as a Texas company, gave the location of the proposed
carwash installation as being in Texas, and stated, “DFS would not consider the
transaction without your support based on the start-up nature [of Mondial’s business]
and the lack of [its] financial history.” The letter concluded with the following text,
followed by a signature line, which Karcher signed to consummate the guaranty (“the
Mondial guaranty”):
Please confirm in the space provided that [Karcher] agrees to provide
full recourse for the following transaction:
 
Lease:Mondial, Inc. Hempstead, TX.
 
Equipment:(1) new Karcher car and (1) new Karcher
truck wash
 
Sales Price:Approximately $295,000.00
 
Amount to be Financed:Approximately $290,000.00
 
Term:60 months
 
Securities:–Corporate guarantee of [ICS].
–Personal guarantee of Sultan Mahmood
and Mohammed Abid Khan.



–Landlord/Mortgagee waiver from
Allied Capital Corporation.

Under the Mondial guaranty, Karcher would be liable only if Mondial and all other
guarantors had first defaulted. DFS would not have agreed to enter into the carwash
lease with Mondial had ICS and Karcher not executed the Mondial guaranty. 
Nonetheless, Mondial was not a party to the Mondial guaranty signed by Karcher, and
Mondial was even unaware that Karcher was guaranteeing the carwash lease.
          Before executing the Mondial guaranty, DFS and Karcher had a preexisting
relationship, begun in approximately 1999, in which Karcher agreed to guarantee
loans that DFS made to ICS—provided that Karcher had previously approved the
loan—in order for ICS to purchase Karcher’s products (“the ICS guaranty”). The ICS
guaranty was solicited by a letter from DFS (from Illinois) to Karcher (in Germany),
and it provided that the law of Illinois would govern the agreement. The ICS
guaranty was still in force when Karcher entered into the Mondial guaranty. In fact,
Mohammed Abid Khan, a shareholder and officer of Mondial, testified that he
learned that “[DFS] and Karcher had some arrangement. And if [Mondial] were to
lease this agreement from [DFS], we will [sic] have a favorable leasing rate and all
of that.”
 
          Mondial sued Karcher, ICS, and Alpha, among others, alleging, “The carwash
did not have all of the features that Defendants promised and the carwash did not
work properly. The carwash is worth much less than Defendants represented it to be
worth. Mondial has not made the profits from the carwash that Defendants
represented it would make. Additionally, Mondial has suffered consequential
damages from owning the poor-quality carwash, including lost profits.” Mondial
asserted the following causes of action: (1) breach of contract, for “providing a
carwash that did not perform as promised and that did not contain all of the features
that were promised”; (2) fraud, for making “material misrepresentations” to Mondial;
(3) fraudulent inducement, for “knowingly and intentionally induc[ing] Mondial to
enter into an agreement”; (4) negligent misrepresentation, for making
“misrepresentations in the course of their business or in a transaction in which they
had an interest” and by supplying “false information for the guidance of others”; and
(5) breach of “the implied warranty and merchantibility and fitness for a particular
purpose.” As pleaded, all causes of action arose from the sale of, and the defendants’
representations concerning, the carwash.
Specific Personal Jurisdiction
          In its sole issue, Mondial argues that the trial court erred in concluding that it
could not exercise specific personal jurisdiction over Karcher because Karcher
guaranteed the carwash lease.
A.      The Law
          “The plaintiff bears the initial burden of pleading sufficient allegations to bring
a non[-]resident defendant within the provisions of the long-arm statute.” Marchand,
83 S.W.3d at 793. The burden is then on the non-resident defendant to negate all
bases for personal jurisdiction. See id. The standards for considering personal
jurisdiction are well established:
The Texas long-arm statute governs Texas courts’ exercise of
jurisdiction over non[-]resident defendants. See Tex. Civ. Prac. &
Rem. Code Ann. §§ 17.041-.045 [(Vernon 1997)]. That statute permits
Texas courts to exercise jurisdiction over non[-]resident defendants that
“[do] business” in Texas, and the statute lists some activities that
constitute “doing business.” The list of activities, however, is not
exclusive. We have held that section 17.042’s broad language extends
Texas courts’ personal jurisdiction “as far as the federal constitutional
requirements of due process will permit.” . . .
 
Personal jurisdiction over non[-]resident defendants is
constitutional when two conditions are met: (1) the defendant has
established minimum contacts with the forum state, and (2) the exercise
of jurisdiction comports with traditional notions of fair play and
substantial justice. A non[-]resident defendant that has “purposefully
availed” itself of the privileges and benefits of conducting business in
the foreign jurisdiction has sufficient contacts with the forum to confer
personal jurisdiction. Although not determinative, foreseeability is an
important consideration in deciding whether the non[-]resident
defendant has purposefully established “minimum contacts” with the
forum state. However, a defendant should not be subject to a foreign
court’s jurisdiction based upon “random,” “fortuitous,” or “attenuated”
contacts. Because of the unique and onerous burden placed on a party
called upon to defend a suit in a foreign legal system, the minimum
contacts analysis is particularly important when the defendant is from
a different country.
 
Personal jurisdiction exists if the non[-]resident defendant’s
minimum contacts give rise to either specific jurisdiction or general
jurisdiction. Specific jurisdiction is established if the defendant’s
alleged liability arises from or is related to an activity conducted within
the forum.

Id. at 796-97 (emphasis added; most citations omitted). Therefore, for a court to
exercise specific personal jurisdiction over a non-resident defendant, the defendant’s
contacts with the forum must be purposeful, and the cause of action must arise from
or relate to those contacts. Coleman, 83 S.W.3d at 806. A single contact “of
substantial quality and nature” may thus suffice to establish specific personal
jurisdiction when the cause of action arises from that contact. Shapolsky v. Brewton,
56 S.W.3d 120, 132 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).
B.      Mondial’s Allegations and the Trial Court’s Determinations
          Relevant to specific personal jurisdiction, Mondial alleged that Karcher “knew
that the carwash . . . was going to be installed in Texas”; “took steps to make sure that
the carwash was sent to Texas”; and “financed” the carwash’s purchase, evidently
meaning that Karcher guaranteed the carwash lease.
 
 
          After granting the special appearance, the trial court found and concluded, in
relevant part, as follows:
FINDINGS OF FACT
. . .
 
41.Karcher had no direct contact with and made no sales to Mondial
and made no representations to Mondial before or during the sale
of a Karcher carwash to Mondial.
 
42.Mondial never met with Karcher . . . .
 
43.Mondial entered into a lease with [DFS] for a carwash
manufactured by Karcher.
 
44.Karcher had a preexisting relationship with [DFS] in which
Karcher agreed to act as guarantor for ICS, Karcher’s U.S.
distributor.
 
45.The preexisting relationship with [DFS] is reflected in a letter
dated 1999 which was sent to Karcher from Illinois by [DFS].
 
46.[DFS] would not agree to lease to Mondial unless Karcher and
ICS guaranteed the lease.
 
47.[DFS] asked for the guaranty in a letter mailed to Karcher from
Missouri.
 
48.Karcher was only a guarantor in the event Mondial, its two
officers, and ICS all defaulted.
 
49.Mondial was unaware of the guaranty by Karcher of the lease.




CONCLUSIONS OF LAW
 
1.Karcher, a non-resident, has not purposefully done any act or
consummated any transaction in Texas and, more specifically, has
not purposefully done any act or consummated any transaction in
Texas especially related to the causes of action before this Court.
 
2.Karcher has never purposefully availed itself of the privileges of
doing business in Texas.
. . . .
 
4.Karcher does not engage in business in Texas within the meaning
of the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code 
§ 17.041 et seq.
 
5.Mondial’s causes of action as pleaded do not arise out of, or relate
to, Karcher’s guaranty of Mondial’s lease with [DFS].
 
6.Jurisdiction over Karcher will offend traditional notions of fair
play and justice.
. . . .
 
9.The guaranty entered into between Karcher and [DFS] does not
show any purposeful availment of the laws of Texas.
 
10.There is no substantial connection between Karcher and Texas.
 
11.Karcher’s activities were not purposefully directed to Texas and
the present litigation did not arise from or relate to Karcher’s
activities, i.e., its guaranty.
 
12.Accordingly, Karcher has negated all bases for establishing
personal jurisdiction.


 
C.      Minimum Contacts
          We hold that the trial court did not err in concluding that, by signing the
Mondial guaranty, Karcher did not purposefully avail itself of the privileges and
benefits of conducting business in Texas and that, even if Karcher had done so
purposefully, Mondial’s causes of action did not arise from or relate to Karcher’s
signing the Mondial guaranty.
          1.       The Mondial Guaranty Does Not Show Karcher’s Purposeful
Availment of Texas’s Benefits

          The Mondial guaranty was between Karcher, in Germany, and DFS, in
Missouri. The Mondial guaranty on its face was in the form of a letter from DFS to
Karcher, and nothing showed that Karcher instigated that particular guaranty. To the
contrary, the undisputed evidence showed that Karcher had no part in the sales and
distribution of its products in the United States, after Karcher sold its products to ICS. 
The Mondial guaranty was also apparently executed pursuant to a preexisting
agreement (the ICS guaranty) between Karcher, in Germany, and DFS, in Illinois, in
order to allow ICS—Karcher’s independent importer based in Florida and also a
separate guarantor of the Mondial carwash lease—to purchase Karcher’s carwash
products. The ICS guaranty had nothing to do with Texas, and it did not give Karcher
any control over where ICS chose to market, sell, or distribute Karcher’s products.
          It is true, as Mondial points out, that the preexisting ICS guaranty did not
require Karcher to guarantee Mondial’s carwash lease with DFS—just like the ICS
guaranty did not require Karcher to guarantee any loan from DFS to ICS, given the
condition that Karcher pre-approve any loan to ICS for Karcher to be liable under the
ICS guaranty. Nonetheless, Karcher executed the Mondial guaranty pursuant to a
preexisting system for ICS’s purchases of Karcher’s products; the ICS guaranty did
not concern anything relating to Texas, it was executed between parties outside of
Texas, and it applied the laws of a state other than Texas; and under any guaranty
applicable to this case, Karcher never controlled where any product that was the
subject of a DFS loan was purchased or sent. Executing a guaranty pursuant to this
type of preexisting agreement, when that preexisting agreement is unrelated to Texas,
simply does not show purposeful availment of Texas’s laws and benefits.


 See
Coleman, 83 S.W.3d at 806 (requiring, for exercise of specific personal jurisdiction,
that non-resident defendant’s contacts with forum be purposeful). That the Mondial
guaranty mentioned that the purchaser was located in Texas and that the carwash
would be installed in Texas do not alone suffice to show that Karcher purposefully
availed itself of Texas’s benefits. See CMMC v. Salinas, 929 S.W.2d 435, 439 (Tex.
1996).



          2.       Mondial’s Causes of Action Do Not Arise Out of or Relate to
Karcher’s Executing the Mondial Guaranty

          Additionally, Karcher’s liability, as alleged by Mondial, does not arise from or
relate to Karcher’s executing the Mondial guaranty. See Marchand, 83 S.W.3d at 796
(“Specific jurisdiction is established if the defendant’s alleged liability arises from or
is related to an activity conducted within the forum.”). For example, Mondial’s
causes of action for fraud, fraudulent inducement, and negligent misrepresentation
concern various parties’ alleged representations about the carwash. Mondial did not
sue for any misrepresentations by Karcher concerning its guaranty of Mondial’s
repayment of the financing for the carwash, but instead sued for misrepresentations
concerning the carwash itself. Moreover, Mondial does not challenge the trial court’s
finding that Mondial “had no direct contact with and made no sales to Mondial and
made no representations to Mondial before or during the sale of a Karcher carwash
to Mondial.” Similarly, Mondial’s contract-breach and warranty-breach claims
concerned the quality and function of the carwash, matters unrelated to Karcher’s
executing the Mondial guaranty. That is, Mondial did not sue for breach of or for
warranties relating to Karcher’s guaranty of Mondial’s repayment of the financing
for the carwash, but for breach of and warranties relating to the underlying contract
for the carwash sale.


 There is no allegation that Karcher’s act of guaranteeing
Mondial’s obligations under the DFS-Mondial lease damaged Mondial in any way. 
Accordingly, Karcher’s alleged liability under these causes of action is unrelated to
its executing the Mondial guaranty.
Conclusion
          For the reasons discussed above, we hold that the trial court did not err in
concluding that Karcher had no minimum contacts with Texas that would allow a
Texas court to exercise specific personal jurisdiction over Karcher.


 Because we have
determined that Karcher did not have the minimum contacts necessary for the trial
court to exercise personal jurisdiction over it, we need not determine whether
traditional notions of fair play and substantial justice would allow the exercise of
long-arm jurisdiction over Karcher. Accordingly, we overrule Mondial’s sole issue.
          We affirm the order of the trial court.
 
 
Tim Taft
Justice

Panel consists of Justices Taft, Jennings, and Hanks.