# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00661-CV

**California Shock Trauma Air Rescue, Appellant**

**v.**

**Tracy J. Holland, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-09-001789, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Tracy J. Holland sued appellant California Shock and Trauma Air Rescue ("Calstar") alleging violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), *see* Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2002 & Supp. 2009), and the finance code's provisions on consumer debt collection practices ("Texas Fair Debt Collection Practices Act"), *see* Tex. Fin. Code Ann. §§ 392.001-.404 (West 2006 & Supp. 2009), and also asserting claims for common-law fraud and breach of contract. When Calstar failed to appear, Holland moved for default judgment. The trial court granted her motion and awarded her judgment for $10,740.24, which represented treble damages under the DTPA, damages for lost time, and attorney's fees. Calstar filed this restricted appeal, in which it asserts that the court erred in rendering default judgment because (1) the court did not have personal jurisdiction over Calstar,

(2) Calstar was not properly served, and (3) Holland's pleadings did not support the default judgment's award of damages. We will affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Holland collapsed while participating in an endurance race in California. Over her objection, the on-site medical personnel summoned a Calstar helicopter to transport her to the hospital. Holland's health insurance company, after initially refusing, eventually paid a portion of the billed charges for the helicopter. Calstar sent Holland a bill for the difference. Holland disputed that she was responsible for the charges, but Calstar persisted in attempting to collect on the debt. Holland alleged that, in exchange for her promise to pay $1,410.33 and file an appeal with her insurance company, Calstar agreed to forbear collections while the appeal was pending. Holland pleaded that she paid Calstar the agreed amount and filed an appeal with her insurer. Holland alleged that, in violation of the parties' agreement, Calstar immediately renewed its collection efforts, including sending her a "final notice" seeking payment of more than $12,000.

Holland sued Calstar in Texas for violations of the DTPA and the Texas Fair Debt Collection Practices Act and also brought claims for fraud and breach of contract. When Calstar failed to timely answer, Holland moved for default judgment, which the court granted. Calstar filed this restricted appeal.

## STANDARD OF REVIEW

To prevail on a restricted appeal, the appealing party must establish that: (1) it filed notice of the restricted appeal within six months after the judgment was signed; (2) it was a party to

the underlying lawsuit; (3) it did not participate in the hearing that resulted in the judgment complained of and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004) (citing Tex. R. App. P. 26.1(c), 30; *Quaestor Invs., Inc. v. State of Chiapas*, 997 S.W.2d 226, 227 (Tex. 1999)). In determining if error is apparent on the face of the record, we cannot consider extrinsic evidence. *Alexander*, 134 S.W.3d at 848. Here, the parties agree that the first three requirements are met, but they join issue on the fourth.

## DISCUSSION

### *Personal Jurisdiction*

In its first issue, Calstar argues that the trial court erred in rendering default judgment because "Holland failed to allege facts that, if true, would make the defendant amenable to process" under the Texas long-arm statute. Calstar argues that Holland's pleadings do not allege sufficient minimum contacts to establish personal jurisdiction over Calstar; "[r]ather, the sole basis for jurisdiction plead by Holland is that [Calstar] sent her a billing statement and requests for payment." Holland responds that Calstar "cannot argue here that it lacked sufficient minimum contacts with Texas" because it was "required but failed to make that argument in the trial court." In the alternative, Holland asserts that Calstar had sufficient minimum contacts for Texas to exercise specific personal jurisdiction in the present case.

If, as here, a defendant does not have "continuous and systematic" contacts with the forum state sufficient to establish general jurisdiction, the state may exercise "specific jurisdiction" over the defendant if the plaintiff establishes that (1) the defendant has made minimum contacts with

3

Texas by purposefully availing itself of the privilege of conducting activities here, and (2) the defendant's alleged liability arises as a result of those contacts with Texas. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Assuming those two requirements are met, exercising jurisdiction over the defendant must also comport with "traditional notions of fair play and substantial justice." *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). Our jurisdictional analysis does not turn on mechanical tests. *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 880 (Tex. App.—Austin 2008, no pet.). Rather,

> [w]hen considering the quality and nature of a defendant's contacts with Texas, we do not, in other words, lose sight of our ultimate due process inquiry: whether the assertion of jurisdiction is reasonable in light of the nature of the defendant's actions in the forum and the state's interests implicated by them.

*Id.*

Even a single contact may support specific jurisdiction "if the defendant's contact with this state is purposeful and the injury arises from or relates to those contacts." *Moki Mac*, 221 S.W.3d at 572-73; *see also Siskind v. Villa Found. for Educ.*, 642 S.W.2d 434, 437 (Tex. 1982) (single contact can support exercise of personal jurisdiction). "'It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum contacts analysis.'" *Ghosh*, 251 S.W.3d at 868 (quoting *Coleman*, 83 S.W.3d at 806). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Coleman*, 83 S.W.3d at 806. Of course, even if the defendant has minimum contacts with Texas, there must also be "a

4

substantial connection between those contacts and the operative facts of the litigation" to establish jurisdiction. *Moki Mac*, 221 S.W.3d at 585.

"Whether a court can exercise personal jurisdiction over nonresident defendants is a question of law" that we review de novo. *Kelly v. General Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). The plaintiff bears the initial burden of pleading sufficient facts to demonstrate the trial court's personal jurisdiction over the nonresident defendant. *Id.* at 658. Once the plaintiff's pleadings have established jurisdiction, the nonresident defendant may file a special appearance to contest jurisdiction and may present evidence at that time to support its contest. Tex. R. Civ. P. 120a; *Kelly*, 301 S.W.3d at 658. In the present case, Calstar did not file a special appearance, so we have no contrary evidence in the record to dispute the existence of Holland's pleaded jurisdictional facts. Because our review in a restricted appeal is limited to the face of the record and because there is no contrary evidence in the record, our review here is essentially limited to determining whether the jurisdictional facts pleaded by Holland, taken as true, affirmatively demonstrated the trial court's personal jurisdiction over Calstar. *See Kelly*, 301 S.W.3d at 658; *Alexander*, 134 S.W.3d at 848 (appellate review in restricted appeal is limited to face of record).

Citing *BLS Limousine Service, Inc. v. BusLease, Inc.*, 680 S.W.2d 543 (Tex. App.—Dallas 1983, writ ref'd n.r.e.), Holland asserts that Calstar cannot raise a due-process argument for the first time on appeal. Instead, Holland contends that our review is limited to determining whether, based on its pleadings, Holland has demonstrated "jurisdiction under the language of the [Texas] long-arm statute." *See id.* at 546 ("We have found no case holding that a defendant may invoke the 'minimum contacts' test without [contesting personal jurisdiction via a

5

special appearance].").  We need not decide whether to follow *BLS* here because, as discussed below, Holland's pleaded jurisdictional facts pass constitutional muster.  Consequently, under either scope of review, Holland would prevail.

In her live pleading, Holland pleaded that Calstar "agreed on several occasions to forbear further collection efforts in exchange for [Holland's] also appealing her insurer's decision." She pleaded that "[o]n several other occasions, Calstar made both oral and written representations directed to Plaintiff in Texas that Calstar would place [Holland's] account 'on hold' and cease collection efforts pending final decision by [Holland's] insurer."  Holland also pleaded that, relying on Calstar's promises that it would forbear collections, she paid Calstar $1,410.33 and appealed her insurer's prior decision.  Holland alleged that after she paid Calstar,

> Calstar cashed [Holland's] check, and again reiterated in communications directed to Texas that it would cease collections efforts.  Calstar nevertheless—in disregard of its repeated representations—continued to send collection notices to Plaintiff's Texas address, including a "final notice" seeking payment of over $12,000.

Calstar asserts that Holland failed to allege facts that, if true, would make the defendant amenable to process because sending a "bill from a company in another state does not avail the company to Texas jurisdiction."  Calstar claims that "the sole basis for jurisdiction plead by Holland is that Calstar sent her a billing statement and requests for payment."  Calstar argues that it has not purposefully availed itself of the benefits and protections of Texas law because "Holland relies exclusively on the bills and letters that were sent to her [Texas] address in an effort to collect a valid debt," and such limited contact with Texas cannot support a finding of purposeful availment.

6

It asserts that "Holland fails to state any illegal actions taken by Calstar in collection of the debt." We disagree.

Calstar's argument ignores the facts alleged in Holland's pleadings. Holland does not complain that Calstar merely sent her a bill. Rather, she asserts that Calstar, in telephone conversations and writings directed at her in Texas, made an agreement with her—Holland's portion of which was to be completed in Texas—and then breached that agreement. Holland also alleges that, in an effort to collect a debt, Calstar lied to her in phone calls and writings directed at Texas concerning the character, extent, or amount of money that she owed to Calstar. Such allegations are sufficient to allege a cause of action under the Texas Fair Debt Collection Practices Act. *See* Tex. Fin. Code Ann. § 392.304(8), (19) (West 2006). Further, she pleaded that Calstar's misrepresentations constituted an unconscionable action or course of action under the DTPA, *see* Tex. Bus. & Com. Code Ann. § 17.50 (West Supp. 2009), and also constituted common-law fraud.

We conclude that Holland's allegations, taken as true, are sufficient to establish specific jurisdiction in Texas. Holland alleged that Calstar's communications with her were purposefully directed at Texas. She pleaded that she was in Texas when she and Calstar entered into their contract—half of which was to be performed in Texas. Holland also pleaded that, in phone calls and writings directed at Texas, Calstar made misrepresentations to her about a consumer debt she allegedly owed to Calstar. By contracting with a Texas citizen in Texas via telephone conversations and written communications directed at Texas and by engaging in tortious or fraudulent contact via those same communications, Calstar could reasonably anticipate being haled into a Texas court. *Coleman*, 83 S.W.3d at 806. Additionally, Texas's public interest in protecting

Texans from unconscionable conduct and illegal debt-collection practices directed at Texans by foreign corporations also weighs in favor of jurisdiction. *See Ghosh*, 251 S.W.3d at 880 (key due-process inquiry is "whether the assertion of jurisdiction is reasonable in light of the nature of the defendant's actions in the forum and the state's interests implicated by them"). Furthermore, the required nexus exists between Calstar's minimum contacts with Texas and its alleged liability to Holland here. *See Moki Mac*, 221 S.W.3d at 575. Finally, considering the extent of Calstar's repeated contacts with Holland in Texas, their allegedly fraudulent and tortious nature, Texas's strong public interest in preventing deceptive trade practices and fraud in debt collection by foreign corporations, and the nexus between Calstar's contacts and the alleged harm to Holland here, we hold that the court's exercise of personal jurisdiction did not offend traditional notions of fair play and substantial justice. *See Coleman*, 83 S.W.3d at 806. Accordingly, the trial court did not err in exercising personal jurisdiction over Calstar.

We overrule Calstar's first issue.

### *Service of Process Via the Texas Long-Arm Statute*

In its second issue, Calstar asserts that it was not properly served with process. Calstar asserts that "[a]s a California corporation, Calstar maintains a registered agent, who was not served with the citation or petition in this case." Because Holland "did not provide proof" that Calstar was served pursuant the Texas long-arm statute, Calstar argues that the trial court erred in rendering default judgment.

The Texas long-arm statute appoints the Texas Secretary of State as a nonresident's agent for service of process in suits arising from business conducted by the

8

nonresident in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (West 2008). The statute states, in pertinent part:

> The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

*Id.* § 17.044(b). The code defines a "nonresident" as "an individual who is not a resident of this state; and a foreign corporation, joint-stock company, association, or partnership." *Id.* § 17.041. A nonresident can "engage in business" in Texas for the purpose of the long-arm statute if, among other things, the nonresident "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." *Id.* § 17.042(1).

To support a default judgment, the plaintiff bears the burden of showing strict compliance with the rules for issuance of citation and service of process. *McKanna v. Edgar*, 388 S.W.2d 927, 928 (Tex. 1965). Thus, the record must affirmatively show that the plaintiff gave the secretary of state the defendant's proper "home or home office" address. *Morrow v. Rockwald Joint Venture I*, No. 04-03-00420-CV, 2004 WL 624925, at *1 (Tex. App.—San Antonio Mar. 31, 2004, no pet.) (mem. op.) (citing *World Distibs., Inc. v. Knox*, 968 S.W.2d 474, 477-78 (Tex. App.—El Paso 1998, no pet.)). Absent fraud or mistake, a certificate from the secretary of state is "conclusive evidence" that the secretary, as the nonresident's agent, received service of process and forwarded it as required by the long-arm statute. *See id.* (citing *Capital Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986)).

9

In the present case, Calstar seems to suggest that service via the secretary of state under the long-arm statute was improper. It asserts that "[a]s a California corporation, Calstar maintains a registered agent, who was not served with the citation or petition in this case." Although that assertion might be true, it is immaterial. Because Calstar is a nonresident corporation that does not maintain a regular place of business in Texas, the Texas long-arm statute designates the Texas Secretary of State as Calstar's agent for service of process for suits arising from its "business" in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.044(b). In the present case, Holland alleged, among other things, that Calstar, a nonresident, made and then breached a contract with her while she was located in Texas. At least a portion of that contract—Holland's part—was to be completed by Holland in Texas. This conduct is sufficient for the long-arm statute to apply here. *See id.* § 17.042(1).

The record indicates that Holland strictly complied with the long-arm statute's service requirements. The record shows that Holland served the secretary of state as Calstar's agent for service of process and contains a properly filed return of service showing service on the secretary as Calstar's agent. The record also contains an official certificate from the secretary of state indicating that it sent Calstar a copy of the citation and petition via certified mail and received a return receipt bearing the signature of "addressee's agent." Calstar does not allege that Holland failed to give the secretary Calstar's proper "home or home office address," nor is Calstar alleging "fraud or mistake" here. Consequently, the secretary of state's certificate is "conclusive evidence" that the secretary was served with process as Calstar's agent and forwarded the petition and citation

10

to Calstar as required by the long-arm statute. *See Morrow*, 2004 WL 624925, at *2 (citing *Capital Brick, Inc.*, 722 S.W.2d at 401). We overrule Calstar's second issue.

### *Support for Damages in the Pleadings*

In its third issue, Calstar asserts that trial court's award of damages was not supported by Holland's pleadings. Specifically, it asserts that treble damages were unwarranted because Holland did not plead that Calstar's alleged violations of the DTPA were intentional and knowing. It also asserts that "Holland does not state any specific provision in the [Texas Fair Debt Collection Practices Act] or the [DTPA] which [Calstar's] conduct allegedly violates because there is no provision which it violates."

Calstar's argument is without merit. Holland's pleadings alleged that, with respect to Calstar's alleged violations of the DTPA, those "violations were made knowingly and intentionally; thus . . . , her economic damages are to be trebled." Further, as discussed above, Holland cited specific provisions of the DTPA and the Texas Fair Debt Collection Practices Act to support her request for damages. Consequently, Holland's pleadings support the trial court's award of damages.

We overrule Calstar's third issue.

### CONCLUSION

Having overruled Calstar's three appellate issues, we affirm the trial court's judgment.

11

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 31, 2010