# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-05-00017-CV

---

**Law Office of S. Bruce Poling, Appellant**

**v.**

**Auto Place, Inc., Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. GN3-04589, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Law Office of S. Bruce Poling[1] appeals the district court's order granting appellee Auto Place, Inc.'s special appearance and dismissing his Deceptive Trade Practices Act suit. *See* Tex. R. Civ. P. 120a(4); Tex. Bus. & Com. Code Ann. § 17.41-.63 (West 2002 & Supp. 2006). Poling also appeals the court's denial of his motion for sanctions and order of sanctions against him. In two issues, Poling argues that the district court (1) erred in concluding that Auto Place, a New York car dealership, lacked minimum contacts necessary to subject itself to the jurisdiction of a Texas court and (2) abused its discretion by refusing to sanction Auto Place's Texas counsel for failure to appear at a New York deposition, while imposing a $500 sanction against Poling for refusing to allow his deposition to be taken. Because we conclude that the district court did not err

---

[1] The original petition identifies the plaintiff as S. Bruce Poling, "an individual doing business as a sole practitioner of the law."

in its conclusion that Auto Place had insufficient contacts to be haled into a Texas court and that its rulings did not constitute an abuse of discretion, we affirm the district court's order.

## BACKGROUND

At the special appearance hearing, Poling testified that, in 1999 or 2000, a friend introduced him to Tom Culligan, president of Auto Place, during a social visit to the dealership in New York. When Culligan learned that Poling had owned several Porsches in the past, he introduced Poling to his son, Brian Culligan, the general sales manager at Auto Place, and two salesmen. Poling gave one of the salesmen his mobile phone number to discuss the possibility of purchasing a Porsche from Auto Place in the future. Poling testified that he was interested in buying another Porsche coupe.

Over the next four or five years—both before and after the purchase of the vehicle at issue in the underlying order—Poling testified that he and Auto Place salesmen had between eight and twelve telephone conversations, some initiated by him and others by the salesmen. Poling also testified that, during that time, Auto Place sent four or five facsimiles to the Austin hotel where he was living while mold in his Lakeway residence was being remediated, to update him on the cars in their inventory. Poling moved to Sante Fe, New Mexico, where he lived from late 2001 until late 2002, but he remained in contact with Auto Place. In January 2003, after a trip to China, Poling placed a telephone call to Auto Place inquiring whether it had a "yellow C4 Cabriolet" convertible for sale. Auto Place confirmed that it had the car and offered to sell it to Poling, who agreed to purchase it. Poling was apparently in California when he placed the call to Auto Place. He testified

2

that, "I had just returned from China and I made the decision to come to New York directly from California with my California cell phone, which I did."

In February 2003, Poling traveled to New York and consummated the sale of the Porsche at the dealership. He paid for the vehicle in New York by wire transfer from a New Mexico bank, offered proof of insurance from a New Mexico insurance agency, and registered the vehicle in New Mexico. One of Poling's allegations in the underlying suit is that Auto Place promised him a hardtop as a condition of the sale. But Poling took delivery of the convertible without the hardtop, driving it off the lot himself.

After Auto Place was unable to obtain a hardtop for the convertible, Poling returned to New York with the car and attempted to rescind the sale in August 2003. Auto Place refused to rescind the sale. In December 2003, Poling filed suit in Travis County, alleging that Auto Place violated the Texas Deceptive Trade Practices Act. *See* Tex. Bus. & Com. Code Ann. § 17.41-.63. Auto Place challenged the district court's personal jurisdiction over it by special appearance, claiming insufficient contacts with Texas. Poling responded that Auto Place's solicitation of his business by telephone and facsimile transmissions during the period he was in Texas were sufficient to support the exercise of either specific or general jurisdiction.

## DISCUSSION

In two issues, Poling argues that the district court (1) erred in concluding that Auto Place, a New York car dealership, lacked minimum contacts necessary to subject itself to the jurisdiction of a Texas court and (2) abused its discretion by refusing to sanction Auto Place's Texas

counsel for failure to appear at a New York deposition, while imposing a $500 sanction against Poling for refusing to allow his deposition to be taken.

**Standard of review**

We review the trial court's grant of a special appearance *de novo*. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Whether a court has personal jurisdiction over a defendant is a question of law. *American Type Culture Collection*, 83 S.W.3d at 805-06; *BMC Software*, 83 S.W.3d at 794. In making a jurisdictional determination, the trial court must frequently resolve questions of fact. *American Type Culture Collection*, 83 S.W.3d 801, 805-06 (Tex. 2002). If the trial court issues specific findings of fact, the appellant may challenge them for legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 794. But when, as here, the appellant does not challenge the court's fact findings,[2] they are binding on this Court. *Ho Wah Genting Kintron Sdn Bhd v. Leviton Mfg. Co.*, 163 S.W.3d 120, 125 (Tex. App.—San Antonio 2005, pet. denied); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex. App.—Dallas 1993, writ denied). We review *de novo* the district court's legal conclusions drawn from the facts to determine their correctness. *BMC Software*, 83 S.W.3d at 794; *Dallas County v. Swietzer*, 881 S.W.2d 757, 763 (Tex. App.—Dallas 1994, writ denied) (stating that courts review conclusions of law as a matter of law, not for sufficiency of evidence).

---

[2] The sole reference Poling makes to the district court's fact findings is to state that the court "signed Findings of Fact and Conclusion[s] of Law on September 28, 2004 as proposed by Appellee without adopting a single sentence of the Proposed Finding of Facts submitted by Appellant on July 13, 2004." He does not, however, challenge the findings the court made.

4

**Personal jurisdiction**

A claimant who sues a nonresident defendant bears the initial burden of pleading sufficient allegations to satisfy the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793. The long-arm statute authorizes a trial court to exercise jurisdiction over a nonresident who "does business" in Texas. *Id.* at 795; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997). In order for a court to exercise personal jurisdiction over a nonresident defendant, due process requires the defendant to have purposefully established such minimum contacts with the forum state that it could reasonably anticipate being sued in the courts of the state. *Commonwealth Gen. Corp. v. York*, 177 S.W.3d 923, 924 (Tex. 2005). Thus, the Texas long-arm statute reaches as far as the federal constitutional requirements of due process will allow. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). The exercise of jurisdiction must also comport with principles of fair play and substantial justice. *York*, 177 S.W.3d at 925.

A nonresident defendant's contacts with the forum state may give rise to either general or specific jurisdiction. *Id*. General jurisdiction is established when the defendant has made continuous and systematic contacts with the forum. *Id.* Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Id*. Once the plaintiff pleads sufficient facts to satisfy the long-arm statute, the burden shifts to the defendant to negate all asserted jurisdictional bases. *See BMC Software*, 83 S.W.3d at 793.

We begin by examining the record to determine whether Auto Place's contacts with Texas were sufficient to establish specific jurisdiction.

**Specific jurisdiction**

In his first issue, Poling contends that the district court erred in concluding that Auto Place, a New York car dealership, lacked minimum contacts necessary to subject itself to the jurisdiction of a Texas court. He argues specifically that Auto Place subjected itself to jurisdiction in Texas by placing telephone calls and sending facsimile transmissions to him in Texas to solicit his business. For the trial court to have had specific jurisdiction over Auto Place, it must have (1) purposefully made minimum contacts with Texas and (2) Poling's causes of action must have arisen from or be related to those contacts. *See York*, 177 S.W.3d at 925. The touchstone of our jurisdictional analysis is whether the nonresident "purposefully availed" itself of the privilege of conducting activities in Texas, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). Because specific jurisdiction requires a substantial connection between Texas, the lawsuit, and the defendant, we focus not on where the injury was sustained, but on the defendant's actions in Texas. *See id.* at 789-90.

The record does not show that Auto Place purposely "purposefully availed" itself of the benefits of conducting business in Texas. The district court's findings of fact—which Poling did not challenge—state that

3. Auto Place, Inc. does not do business within the jurisdictional boundaries of the State of Texas. It is not registered or licensed in any capacity within Texas, has never maintained an office or facility in Texas, and has no employees in Texas. Auto Place, Inc. has never directed any advertising[3] toward the State of Texas, or

---

[3] Texas courts have found that a non-resident's marketing efforts for product sales, such as advertising in Texas telephone directories, operating an office for sales information and support, and certain Internet activities meet the "purposeful availment" test. *See Michiana Easy Livin' Country,*

in Texas. It maintains no bank account, mailing address, or telephone listing in Texas.

4. Auto Place, Inc. has never paid any taxes to any governmental entity in the State of Texas, nor been billed or invoiced any monies by any governmental entity in the State of Texas. Apart from the instant case, Auto Place, Inc. has never been a party to any litigation in the State of Texas, whether in State or federal court.

5. Auto Place, Inc. does not contract by mail or otherwise with Texas residents.

6. Auto Place, Inc. does not recruit Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas.

7. Auto Place, Inc. has never committed a tort in whole or in part in Texas.

. . . .

10. None of the documentation of the sale of the vehicle indicates that the vehicle would be transferred to the State of Texas.

. . . .

14. Auto Place, Inc. did not purposefully do any act or consummate any transaction within the State of Texas.

. . . .

17. Auto Place, Inc. had no notice at the time Plaintiff [Poling] purchased the vehicle that Auto Place, Inc. might be subjected to litigation in Texas, as a result of the sale of the vehicle to Plaintiff. Nor did Auto Place, Inc. consent in any way by virtue of the sale of the vehicle to Plaintiff to being subjected to litigation within Texas.

These findings are supported by the affidavits of Thomas Culligan, Auto Place's

president; Brian Culligan; and Mark Bramwell, an Auto Place salesman, which were introduced as

_Inc. v. Holten_, 168 S.W.3d 777, 785 (Tex. 2005) (citing _Kawasaki Steel Corp. v. Middleton_, 699 S.W.2d 199, 201 (Tex. 1985); _Siskind v. Villa Found. for Educ., Inc._, 642 S.W.2d 434, 436 (Tex. 1982); _Reiff v. Roy_, 115 S.W.3d 700, 705-06 (Tex. App.—Dallas 2003, pet. denied). The record does not reflect any such activity by Auto Place in Texas.

evidence at the special appearance hearing. In addition to the facts recited in the court's findings, Thomas Culligan's affidavit avers that "the entire sales transaction of the referenced automobile [2003 Porsche] took place in New York for a car that was to be driven to New Mexico." He attached copies of eight documents that were supported by his business records affidavit,[4] including

- the certificate for purchase of motor vehicle, showing registration of the vehicle's title at Poling's address, 1015 Sierra Pinon, in Santa Fe, New Mexico;

- Poling's driver's license, issued by the state of New Mexico and listing his address at 3 Bluesky Circle, in Santa Fe, New Mexico;

- the retail certificate of sale, showing Poling's Sierra Pinon address in New Mexico;

- the New York in transit permit/title application, identifying the vehicle's destination as Poling's Sierra Pinon address in New Mexico;

- the certificate of origin for a vehicle, showing Poling's Sierra Pinon address in Santa Fe, New Mexico;

- Poling's proof of financial responsibility cards, reflecting Poling's Sierra Pinon address in Santa Fe, New Mexico, as well as a Santa Fe insurance agent; and

- the certificate of title, showing Poling's Sierra Pinon address in Santa Fe, New Mexico.

Brian Culligan's affidavit states that "as far as [he] knew, Poling was taking the car to New Mexico." He also denied speaking with Poling by telephone and attempting to call him any time before Poling purchased the vehicle at issue.

---

[4] *See* Tex. R. Evid. 902(10).

8

Mark Bramwell's affidavit states that "[d]uring the negotiations for the sale of the vehicle Mr. Poling indicated that he may take the vehicle to New Mexico or Texas." A Culligan worksheet in the record demonstrates this indecision. But "when the final sale was written up, and as evidenced on the final buyer's order, the In-Transit Permit/Title Application and the Certificate of Title, it clearly appeared Mr. Poling would be registering the vehicle in, and transporting the vehicle to, the State of New Mexico."

The record shows that Auto Place's only contact with this state was through telephone calls to Poling, a Texas resident, at a mobile telephone number with a Texas area code, and four or five facsimile transmissions to Poling, over a four or five year period. "Several" of the parties' eight to twelve telephone calls, according to Poling's testimony, were initiated by him after his February 2003 purchase of the Porsche. These communications are insufficient proof that Auto Place purposely availed itself of the privileges of Texas law.[5] As the Texas Supreme Court recently noted,

> changes in technology have made reliance on phone calls obsolete as proof of purposeful availment. . . . [A telephone] number no longer necessarily indicates anything about the caller's location. If jurisdiction can be based on phone conversations "directed at" a forum, how does a defendant avail itself of any jurisdiction when it can never know where the other party has forwarded calls or traveled with a mobile phone?

---

[5] In *Holk v. USA Managed Care Org., Inc.*, 149 S.W.3d 769 (Tex. App—Austin 2004, no pet.), this Court stated that "personal solicitation over the telephone, *alone*, is a sufficiently purposeful act subjecting the defendant to personal jurisdiction." *Id.* at 775. In light of the supreme court's more recent decision in *Michiana*, we expressly disapprove of that language. *See Michiana*, 168 S.W.3d at 791.

9

*Id.* at 791. Poling paid for his Porsche in New York with a wire transfer from a bank in New Mexico, tendered a New Mexico driver's license, presented proof of financial responsibility from New Mexico, drove the vehicle from New York, and registered it in New Mexico. Auto Place's transaction with Poling was similar to the one between another Texas resident and an Indiana recreational vehicle seller in *Michiana*, in which the supreme court noted that

> a nonresident corporation ought to be subject to suit in any jurisdiction where it 'enjoys the benefits and protection of the laws of that state.' Here, it is hard to imagine what possible benefits and protection Michiana [the vehicle seller] enjoyed from Texas law. Holten [the Texas purchaser] paid for the RV in advance, and could not have planned on taking it to Indiana regularly for service. Everything Michiana wanted out of the contract it had in hand. Indeed, it is hard to imagine how Michiana would have conducted its activities any differently if Texas had no law at all.

*Id.* at 787. As in *Michiana*, the record supports the conclusion that Auto Place has not invoked the benefits and protections of the laws of the State of Texas. *See York*, 177 S.W.3d at 925. Thus, we conclude that the record disproves the first element of the specific jurisdiction test.

The record also disproves the second prong of the specific jurisdiction test, because the dispute over Auto Place's procurement of a hardtop for the Porsche—which is the basis for Poling's suit—did not "arise from or relate to" any activity that Auto Place conducted in Texas. *See id.* In his petition, Poling alleges that Auto Place induced him to purchase the Porsche by promising to obtain a hardtop for the convertible within a reasonable time, when it had no intention of obtaining it, and which it failed to obtain. Poling further alleges that Auto Place misrepresented its salesman's authority to negotiate the final terms of the transaction. But Poling testified that the transaction at issue resulted from a telephone call that he initiated to Auto Place in New York. Personal

jurisdiction over a non-resident vehicle seller is not dependent on the purchaser's unilateral choice to place his call from a certain state. *Michiana*, 168 S.W.3d at 787. Furthermore, it appears from the record that Poling's inquiry about the Porsche occurred while he was in California, not Texas.

Additionally, Brian Culligan's affidavit states that the buyer's final order, which he completed, reflects that "the hardtop for the vehicle was not part of the original sales transaction" to Poling. Culligan averred that Poling inquired about obtaining a hardtop for the vehicle, and Culligan responded by stating that he "would try to find one for him at another dealer or order another car with a hardtop on it and sell the hardtop to him in a separate transaction." The buyer's final order for Poling's purchase of the Porsche contains a line item stating "delete hard top." We conclude, based on this record, that Poling's cause of action does not "arise from or relate to" any activity that Auto Place conducted in Texas. *See York*, 177 S.W.3d at 925. Because Auto Place's alleged liability does not arise from or relate to any activity that it conducted in Texas, the district court could not have properly exercised specific, personal jurisdiction over Auto Place. We now consider whether Auto Place had "continuous and systematic" contacts with Texas to establish general jurisdiction.

**General jurisdiction**

General jurisdiction is premised on the notion of consent. *American Type Culture Collection*, 83 S.W.3d at 808. That is, by invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there. *Id.* When a nonresident defendant purposefully structures transactions to avoid the benefits and protections of a forum's laws, the legal fiction of consent no longer applies. *Id.*

11

Other than the occasional telephone calls and facsimiles to Poling over a four to five year period, there is no evidence in the record that Auto Place solicited sales in Texas. The affidavits Auto Place submitted in support of its special appearance emphasize that Auto Place conducts all of its business in Williamsville, New York, it does not do business anywhere within the geographic boundaries of Texas, it does not have any real estate or personal property in Texas, and it maintains no agent in, or other ties to Texas. Tom Culligan's affidavit further states that all sales take place in New York, Auto Place is divested of title in New York, and possession and risk of loss pass to the buyer in New York. Title passing outside of Texas is a factor that weighs against a finding that Texas has general jurisdiction over a nonresident defendant such as Auto Place. *See id*.

Based on this record, we conclude that Auto Place has not had continuous and systematic contacts with Texas such that it could reasonably anticipate being sued in Texas. *See id.* We overrule Poling's first issue.

**Sanctions**

In his second issue, Poling argues that the district court erred by denying his request for sanctions against Auto Place and by imposing sanctions against Poling. A trial court's ruling on a motion for sanctions is reviewed for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Id.* at 838-39. The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Id*. at 839. In determining whether the sanctions imposed are "just," we consider (1) whether there is a direct relationship between the offensive conduct and the sanction imposed and (2) whether the sanction is excessive. *Id*. There is a direct relationship between the offensive

12

conduct and the sanction imposed when a sanction is directed against the abuse and toward remedying the prejudice caused the innocent party. *Id.* (citing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Sanctions are not excessive if the punishment fits the crime and the sanction imposed is no more severe than necessary to satisfy its legitimate purposes. *Id.* (citing *TransAmerican*, 811 S.W.2d at 917) (suggesting, as adequate alternatives to death penalty sanctions, taxing deposition costs against party who failed to attend his deposition and awarding attorney's fees to affected party).

Poling's complaint concerns the handling of a series of depositions during discovery on the personal jurisdiction issue. Poling served notices of depositions, which he intended to conduct in Austin, on three of Auto Place's employees. The district court quashed the depositions and ordered two of Auto Place's employees to be deposed in Buffalo, New York. Auto Place subsequently noticed Poling's deposition, to be held in New York on the same day, upon the conclusion of the Auto Place employees' depositions. Poling moved to quash his own deposition, which the court denied.

Poling appeared at his deposition in Buffalo as scheduled. But Auto Place's Texas counsel did not attend the deposition. Instead, its New York counsel, who had not entered an appearance in the case, appeared for his deposition. Poling objected to the participation of Auto Place's New York counsel, who had not been admitted to practice in Texas *pro hac vice*, and refused to allow his own deposition to proceed. *See* Tex. Gov't Code Ann. § 81.102 (West 2005); Tex. R. Govern. Bar Adm'n XIX. Poling did, however, take the Auto Place's employees' depositions.

While in New York, Poling was served with a lawsuit filed against him by Auto Place. He argues that Auto Place did not intend to take his deposition but induced him to come to

13

New York for the sole purpose of serving him with its New York lawsuit. Poling sought four days' worth of "travel and time" expense, in the amount of $5,743.40, as a sanction against Auto Place's Texas counsel for failing to attend his depositions in New York.

But Poling was able to depose both Auto Place employees as scheduled and was not harmed by the absence of Auto Place's Texas counsel. His argument that Auto Place induced him to travel to New York for the sole purpose of serving him with the New York lawsuit is without merit. The district court *ordered* the depositions to be conducted in New York because that is where Auto Place is located. The sale of the Porsche occurred in New York. Furthermore, there was evidence in the record that Poling regularly visited his family in New York and traveled frequently, including trips to Europe and Florida during the pendency of the litigation.

Based on this record, the court's sanction was just because (1) there was a direct relationship between Poling's refusal to allow his deposition to proceed and the attorney's fees awarded to Auto Place's counsel in defending Poling's unsuccessful motion for sanctions and (2) the $500 sanction was not too severe to satisfy its legitimate purposes of punishment and deterrence. *See Cire*, 134 S.W.3d at 839; *TransAmerican*, 811 S.W.2d at 917-18. We conclude that Poling has not shown that the court acted arbitrarily, unreasonably, or without reference to guiding principles by denying his request for sanctions against Auto Place and by imposing sanctions against him. We overrule Poling's second issue.

**CONCLUSION**

Having overruled both of Poling's issues, we affirm the district court's order.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   August 31, 2006