**Reversed and Rendered and Memorandum Opinion filed December 3, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00540-CV

### CHEVRON THAILAND EXPLORATION & PRODUCTION, LTD., Appellant

### V.

### JAIME TAYLOR, Appellee

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2016-22186**

### MEMORANDUM OPINION

Appellant, Chevron Thailand Exploration & Production, Ltd. (CTEP), brings this interlocutory appeal from the trial court's denial of its special appearance. In a single issue, CTEP argues that the trial court erred when it denied its special appearance because CTEP lacked the minimum contacts with Texas necessary to meet the purposeful availment standard for personal jurisdiction. We hold that the trial court erred when it denied CTEP's special appearance because there is not a

substantial connection between the operative facts of appellee Jaime Taylor's claims and CTEP's contacts with Texas. Accordingly, we reverse and render judgment dismissing Taylor's claims against CTEP for want of personal jurisdiction.

## BACKGROUND

Taylor, a Mississippi resident, sued CTEP, Chevron U.S.A., Inc. (Chevron), Rig QA International, and other entities claiming that their negligence caused the injuries he suffered when he fell on an offshore drilling rig in the Gulf of Thailand in 2015. At the time of the incident, Taylor was a Chevron employee on loan to CTEP.

CTEP filed a special appearance pursuant to Rule 120a of the Texas Rules of Civil Procedure challenging the trial court's assertion of personal jurisdiction over it. CTEP attached the affidavit of Jonathon Noseworthy, a CTEP director and officer, to the special appearance motion. CTEP also attached the deposition of Frank Soler, a Chevron Corporation employee and CTEP's assistant secretary, who testified that he has some involvement with CTEP because it produces gas.[1]

According to Noseworthy, CTEP is a Bermuda company with its principal place of business in Thailand. Noseworthy also stated in his affidavit that CTEP's business consists solely of the development, extraction, and production of oil and gas in the Gulf of Thailand. Noseworthy continued that CTEP (1) has no offices in Texas, (2) conducts no operations in Texas, (3) is not registered to do business in Texas, (4) has no registered agent for service of process in Texas, (5) has no bank accounts in Texas, (6) owns no property in Texas, (7) sells no products in Texas, and (8) provides no services in Texas. Finally, Noseworthy averred that none of

---

[1] Taylor had sued Chevron Corporation in his Original Petition. Chevron Corporation is not named as a defendant in his First Amended Petition.

CTEP's officers and directors office in Texas.

Soler testified that CTEP ran the drilling program on the rig where Taylor worked. Soler further testified that CTEP has had some interactions with Texas. Soler explained that these interactions primarily involved the purchase of goods and services from twenty-two companies with a connection to Texas for use in CTEP's overseas operations and making payments to the Texas bank accounts of these companies.[2] Soler also testified that CTEP paid for the travel of 249 people to Texas between 2012 and 2015. Soler continued that he did not know the purpose of the travel, nor why CTEP agreed to pay for the travel. Finally, Soler testified that CTEP's in-house counsel checked their litigation database and could not locate any other litigation involving CTEP that occurred in Texas.

Taylor responded to CTEP's special appearance by filing an amended petition. Taylor added a new claim alleging that CTEP negligently hired and supervised Rig QA as a safety consultant for the rig. Taylor also filed a response to CTEP's special appearance. Taylor attached the deposition of Peter Kidd, Rig QA's corporate representative, to the response.

Kidd testified that, at the time of his deposition, he was Rig QA's international operations manager. Kidd explained that Rig QA supplies consultants to the oil and gas industry primarily for the commissioning and inspection of new oil rigs. Kidd ensures that all international operations are coordinated between Rig QA and its clients. Kidd further testified that he negotiates the contracts on behalf of Rig QA. At the time of his deposition, Kidd lived in Bangkok, Thailand. Kidd's deposition testimony also established that he was a consultant for Rig QA working in Thailand during the time period relevant

---

[2] Taylor, in his response brief, asserts that CTEP purchased over $40 million of goods and services from these companies in 2015. CTEP does not dispute this total.

3

to this appeal, and that he officed in a "Chevron building." Kidd testified that Rig QA began performing services for CTEP possibly as early as 2007 and that work mostly ended in 2016.[3]

Kidd's deposition then turned to issues more directly relevant to CTEP's special appearance. Kidd testified that he signed the Master Service Agreement (MSA) between CTEP and Rig QA in Thailand.[4] Kidd admitted, however, that Donna Fox, Rig QA's vice president based in Texas, was the primary person responsible for negotiating the price and cost terms of the MSA for Rig QA. Kidd further explained that while Fox was based in Texas, Fox traveled to Thailand several times every year for contract discussions with CTEP. According to Kidd, Rig QA's performance of its duties under the MSA, and CTEP's supervision thereof, occurred exclusively in Thailand. Kidd also testified however, that Fox managed the Thailand operation, and that he reported to her. When performance issues arose regarding Rig QA personnel in Thailand requiring Fox's input, Kidd testified that she would normally consult with him because he was on the ground in Thailand. Kidd testified that he was not aware of any CTEP personnel traveling to Texas to meet with Rig QA regarding the contract at issue here. Kidd specifically testified that he had no meetings in Texas with any persons associated with any Chevron entity in 2014.[5] Kidd continued that he did have one meeting in Texas with a CTEP person in 2017. Kidd described the meeting as a social lunch that

---

[3] According to Kidd, at the time of his deposition in early 2018, Rig QA was not performing services for CTEP but still had a contract with CTEP.

[4] The full title of the MSA is "Master Contractor Services Contract No. 1382805 for Use in the Kingdom of Thailand Between Chevron Thailand Exploration and Production, Ltd.[,] Chevron Offshore (Thailand) Ltd. and Rig Q.A. International, Inc." This contract was effective on August 1, 2015, but Kidd testified there were earlier contracts between Rig QA and CTEP.

[5] Kidd was questioned about 2014 meetings because he had testified that was when he had traveled to Texas for internal meetings with Rig QA personnel and to attend a well control training school. Rigg also testified that he traveled to Texas in 2017.

occurred because they both happened to be in Houston at the same time. Kidd further testified that, at the time of the Houston lunch, Rig QA was no longer performing work on any rigs in the Gulf of Thailand.

The trial court did not admit any evidence at the special appearance hearing, but instead decided the special appearance based on the parties' special appearance filings, the evidence attached to them, and the arguments of counsel. The trial court subsequently denied CTEP's special appearance. CTEP filed a notice of interlocutory appeal soon thereafter. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7).

ANALYSIS

## I.     Standard of review and applicable law

CTEP argues that the trial court erred when it denied its special appearance. A specially appearing defendant has the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo, but the trial court frequently must resolve questions of fact before deciding the question of jurisdiction. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all findings necessary to support the judgment and supported by the evidence are implied, though the sufficiency of the record evidence to support those findings may be challenged on appeal. *Id.* at 795. But, when the jurisdictional facts are undisputed, it is a question of law whether those facts establish jurisdiction, the reviewing court "need not consider any implied findings of fact" and will "consider only the legal question whether the undisputed facts establish Texas jurisdiction." *Old Republic Nat'l Ins. Co. v. Bell*,

5

549 S.W.3d 550, 558 (Tex. 2018).

Texas courts may assert personal jurisdiction over a nonresident if the Texas long-arm statute authorizes the exercise of personal jurisdiction and the exercise is consistent with federal and state constitutional due-process guarantees. *E.g.*, *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Supreme Court of Texas has consolidated these inquiries, holding that the Texas long-arm statute's broad language allows Texas courts to exercise personal jurisdiction as far as the Due Process Clause of the Federal Constitution permits. *BMC*, 83 S.W.3d at 795 (citing *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)).[6] The requirements of the Texas long-arm statute are thus fulfilled if an assertion of personal jurisdiction is consistent with federal due-process limitations. *See Moki Mac*, 221 S.W.3d at 575.

Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Nawracaj v. Genesys Software Sys., Inc.*, 524 S.W.3d 746, 753 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005); *Nawracaj*, 524 S.W.3d at 753.

There are three components to the "purposeful availment" inquiry. *Searcy v.*

---

[6] The Texas long-arm statute provides, in relevant part, that in addition to other acts that may constitute doing business, a nonresident does business in the state if the nonresident (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state, or (2) commits a tort in whole or in part in this state. Tex. Civ. Prac. & Rem. Code § 17.042(1)–(2).

*Parex Res., Inc.,* 496 S.W.3d 58, 67 (Tex. 2016). First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* Second, the contacts relied upon must be purposeful rather than random, fortuitous, isolated, or attenuated. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* A defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to the forum's jurisdiction. *Moki Mac*, 221 S.W.3d at 575 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

A nonresident defendant's purposeful contacts with the forum state may give rise to general or specific jurisdiction.[7] *BMC*, 83 S.W.3d at 795–96. Specific jurisdiction is established if the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). "Merely alleging a defendant committed a tort in Texas, is not dispositive of the jurisdictional issue." *Urban v. Barker*, No. 14-06-00387-CV, 2007 WL 665118, at *5 (Tex. App.—Houston [14th Dist.] March 6, 2007, no pet.) (mem. op.). Therefore, a plaintiff must allege that the facts that give rise to the claim also subject the defendant to personal jurisdiction. *See Kelly*, 301 S.W.3d at 659 ("When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleading to include the necessary factual allegations, *see* Tex. R. Civ. P. 63, thereby allowing jurisdiction to be decided based on the evidence rather than allegations, as it should be."); *Griffith Tech., Inc. v. Packers Plus Energy Serv. (USA), Inc.*, No. 01-17-00097-CV, 2017 WL 6759200, at *2 (Tex. App.—Houston [1st Dist.] Dec. 28, 2017, no pet.) (mem. op.). In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant,

---

[7] Taylor conceded in his response brief that general jurisdiction is not at issue in this appeal.

the forum, and the litigation. *Kelly*, 301 S.W.3d at 659; *Megadrill Serv., Ltd. v. Brighouse*, 556 S.W3d 490, 496 (Tex. App.—Houston [14th Dist.] 2018, no pet.). For a nonresident-defendant's contacts with Texas to support an exercise of specific jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585. The operative facts are those facts that would be the focus of a trial on the merits. *Law Firm of Donald Wochna, LLC v. Am. Frontier Mgmt.*, No. 03-17-00489-CV, 2018 WL 1614782, at *4 (Tex. App.—Austin April 4, 2018, pet. ref'd) (mem. op.).

## II. There is not a substantial connection between CTEP's contacts with Texas and the operative facts of the litigation.

In this case, Taylor alleges that CTEP is subject to specific jurisdiction because it committed a tort in Texas when it negligently hired Rig QA. To establish a claim for negligent hiring, a plaintiff must prove the following elements: (1) a duty to hire competent employees; (2) an employer's breach of the duty; and (3) the employer's breach of the duty proximately caused the damages sued for. *THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 573 (Tex. App.—Amarillo 2010, pet. denied). When a negligent hiring claim is alleged, the basis of responsibility is the employer's negligence in hiring an incompetent employee who the employer knew or, in the exercise of ordinary care, should have known was incompetent or unfit, and thereby created an unreasonable risk of harm to others. *Law Firm of Donald Wochna, LLC*, 2018 WL 1614782, at *6.

In support of his contention that CTEP is subject to specific jurisdiction in Texas, Taylor emphasizes that CTEP had commercial interactions, exact nature unknown, with twenty-two companies possessing some type of connection with Texas, and that CTEP paid for 249 trips to Texas, purpose unknown, between 2012

and 2015. We conclude neither supports the conclusion that CTEP is subject to specific jurisdiction because there is no evidence in the record connecting any of these contacts with the operative facts of this claim. *See Moki Mac*, 221 S.W.3d at 585 (stating "that for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation").

Next, Taylor points out that (1) Rig QA is a Texas-based corporation, (2) Donna Fox, vice president of Rig QA who offices in Texas, managed Rig QA's Thailand operations, and (3) CTEP occasionally communicated with Fox while she was in Texas. We conclude these undisputed facts do not control the outcome because they place the emphasis on a third party, not the defendant challenging personal jurisdiction. *See Kelly*, 301 S.W.3d at 659 (stating that when conducting specific-jurisdiction analysis, courts focus on the relationship among the defendant, the forum, and the litigation).

We find the court's reasoning in *Law Firm of Donald Wochna*, 2018 WL 1614782, at *1–*8, persuasive in resolving this appeal. In that case, Carlile, Patchen & Murphy (the Carlile Firm), an Ohio law firm, retained the Law Office of Donald Wochna, LLC (the Wochna Firm), also an Ohio law firm, to assist with electronic discovery in an Ohio lawsuit in which American Frontier Management, LLC, a Texas company, was a defendant. *Id.* at *1. The Carlile Firm charged the Wochna Firm with the responsibility of locating a qualified third-party computer forensic or electronic discovery expert and, once the expert was retained by the Carlile Firm, supervising that expert's efforts in the Ohio litigation. *Id.*

The Wochna Firm subsequently located, vetted, and recommended Prime Focus Forensics, LLC, a Texas company, as a third-party computer forensic expert. *Id.* The Carlile Firm retained Prime Focus. *Id.* Within days of Prime Focus

beginning its work in the Ohio litigation, accusations arose that Prime Focus destroyed American Frontier's digital data rather than copied it. *Id.* at *2. American Frontier sued Prime Focus, the Carlile Firm, and the Wochna Firm in Texas alleging various negligence claims. *Id.* American Frontier alleged that the Wochna Firm negligently hired, retained, and supervised Prime Focus. *Id.* The Wochna Firm filed a special appearance and attached an affidavit by Donald Wochna in support. *Id.* In his affidavit Wochna averred

> that all of his actions with regard to Prime Focus "were performed in support of the [Wochna Firm's] obligations to the Carlile Firm in the Ohio litigation" and were done from the [Wochna Firm's] office in Ohio: "None of the services provided by the [Wochna Firm] in the Ohio litigation were performed in Texas, as they were all conducted from the [Wochna Firm's] office in Ohio. At no point did I, or any other representative of the [Wochna Firm] travel to Texas to identify, vet, or supervise Prime Focus, or to perform any other service in the Ohio litigation."

*Id.* The trial court denied the Wochna Firm's special appearance. *Id.* at *3.

The court of appeals reversed. *Id.* at *8. Crucial to the court's decision was the undisputed evidence "that Wochna's acts or omissions that were related to the operative facts of the appellees' claims occurred in Ohio. . . ." *Id.* at *7–*8. As a result, the court concluded "that a substantial connection does not exist between the [Wochna Firm's] contacts with Texas that appellees reference and the operative facts of appellees' negligent hiring and supervision claims against the [Wochna Firm]; rather, the connection between the [Wochna Firm's] referenced contacts with Texas and the operative facts of the litigation is tenuous." *Id.* at *8.

Here, the evidence is undisputed that (1) CTEP is a Thailand-based company operating exclusively in Thailand or its waters, (2) Rig QA's negotiations regarding the contract with CTEP occurred in Thailand, (3) Kidd, Rig QA's

country manager in Thailand, never met with any CTEP personnel in the United States regarding CTEP's contract with Rig QA, (4) Kidd executed the contract with CTEP on behalf of Rig QA in Thailand, (5) the contract called for performance of services in Thailand, (6) Kidd testified that all invoices Rig QA sent to CTEP were for services Rig QA performed outside of Texas, (7) Kidd was responsible for the daily operations of Rig QA employees operating in Thailand, (8) Fox traveled to Thailand several times every year for contract discussions with CTEP, and (9) Taylor was working on a rig in the Gulf of Thailand when he allegedly fell and was injured. Finally, Taylor does not point to any evidence in the record establishing that CTEP conducted its investigation into Rig QA's fitness as a safety contractor in Texas.

Because Taylor was working on a rig in the Gulf of Thailand when he allegedly fell and was injured, we conclude that the focus of the trial will be on acts or omissions in Thailand. As a result, the connection between CTEP's contacts with Texas and the operative facts of the litigation is tenuous at best and that CTEP could not have reasonably anticipated being called into a Texas court to defend against Taylor's claims. *See Wilmington Trust, N.A. v. Hsin-Chi-Su*, 573 S.W.3d 845, 859 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (stating that "any connection between these two matters and the E Whale guaranty transaction is far too tenuous to support an assertion of specific jurisdiction over Su."); *Law Firm of Donald Wochna*, 2018 WL 1614782, at *8 (concluding that "connection between the [Wochna Firm's] contacts with Texas and the operative facts of the litigation is tenuous."). We therefore hold that because there is not a substantial connection between the operative facts of the case and CTEP's contacts with Texas, the trial court erred when it denied CTEP's special appearance.[8] *See*

_____

[8] Because we have determined that CTEP did not have sufficient minimum contacts with

11

*Megadrill Serv., Ltd.*, 556 S.W.3d at 500 (holding trial court erred when it denied non-resident defendant's special appearance "because the record conclusively show[ed] that Brighouse's alleged slip and fall accident does not arise out of or relate to" defendant's contacts with Texas). We sustain CTEP's issue on appeal.

### CONCLUSION

Having sustained CTEP's issue on appeal, we reverse the trial court's order denying CTEP's special appearance and render judgment dismissing Taylor's claims against CTEP for want of personal jurisdiction.


/s/     Jerry Zimmerer
        Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.

---

Texas for a Texas court to assert specific personal jurisdiction over it, we need not reach CTEP's arguments regarding whether subjecting it to personal jurisdiction in a Texas court would offend traditional notions of fair play and substantial justice.