**REVERSE and RENDER and Opinion Filed April 19, 2023**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00096-CV**

**SEVENLY OUTFITTERS, LLC, JAMES VAN EERDEN AND MATTHEW FINK, Appellants**
**V.**
**MONKEDIA, LLC, Appellee**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-05779-2021**

## MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Molberg

Appellants Sevenly Outfitters, LLC (Sevenly), James Van Eerden, and Matthew Fink appeal the trial court's denial of their special appearances, arguing the court erred in finding they had minimum contacts with the State of Texas. Appellee Monkedia, LLC (Monkedia), concedes the trial court lacked personal jurisdiction over Van Eerden and Fink, but argues the court correctly determined it had personal jurisdiction over Sevenly. We reverse the trial court's order as to all three appellants and render judgment dismissing the cause for want of jurisdiction. *See* TEX. R. APP. P. 47.4.

## I.  Background

Monkedia alleged in its October 20, 2021 original petition that it was the owner and holder of a promissory note under which appellants were obligated to make monthly $1,000 payments from July 2020 through December 2020, and to make monthly $1,500 payments from January 2021 through December 2021. Monkedia alleged appellants made four payments—in September, October, December, and January, totaling $4,000—and then failed to make any more payments on the note.  Monkedia alleged appellants were in default under the note, having failed to make any payments since January 2021, and therefore "all remaining amounts under the note [were] immediately due and payable." Monkedia alleged that amount, including principal and twelve percent interest, was $39,456, and it alleged a cause of action for breach of promissory note.

Monkedia alleged the trial court had personal jurisdiction over appellants "because [they] have engaged in acts which constitute doing business in the State of Texas, including but not limited to, conducting business in the State, and entering into a contract with Plaintiff, a Texas resident, which is performable in whole or in part in the State of Texas."

According to the promissory note, attached as an exhibit to the original petition, Sevenly was a North Carolina entity,[1] and Monkedia was a Texas LLC based in Irving. Sevenly promised to pay Monkedia, "at [Monkedia's] offices" in Irving, the principal amount of $40,000, plus interest, according to the schedule described above, and then the "entire outstanding principal balance of [the] note, together with all accrued but unpaid interest, [would] be due and payable on January 31, 2022." In the event of default, Monkedia could at its option declare the entire unpaid principal and accrued interest immediately due and payable without additional notice, demand, or presentment. The note was to be "construed in accordance with and governed by the laws of the State of Texas, without regard to principles of conflicts of laws." Van Eerden, as "managing member" of Sevenly, signed the note.

Each appellant filed a special appearance. Van Eerden alleged he had lived in North Carolina for the previous 25 years; he never interacted with Monkedia in his individual capacity—only as a representative of Sevenly; Sevenly was a North Carolina LLC with principal office in Rockingham County, North Carolina and no office or registered agent in Texas; all communications between himself and Monkedia were by telephone or email when Van Eerden was in North Carolina; he

---

[1] Monkedia alleged in its petition that Sevenly was a former limited liability company that had been "administratively dissolved on February 6, 2020." However, evidence presented to the trial court indicates Sevenly's corporate status was reinstated by the North Carolina Secretary of State effective November 21, 2021. The parties on appeal agree "that North Carolina law provides reinstatement is effective retroactively to the date of dissolution."

never traveled to Texas to meet with Monkedia representatives; he did not own any property in Texas and did not have an office or agent in Texas; he signed the promissory note in his capacity as manager for Sevenly.  Van Eerden alleged the relationship between Monkedia and Sevenly began in 2016 when Monkedia started providing Facebook marketing services for Sevenly, which manufactured and sold fashion apparel for nonprofits.  Van Eerden stated there was, to his knowledge "no written contract for the Facebook marketing services provided" by Monkedia.  He stated the balance of the promissory note represented a "contested past due balance [Monkedia] claim[ed] it was due for marketing services"; he signed the promissory note under duress after Monkedia representatives threatened to defame him, Sevenly, and others if it was not signed.

Fink's special appearance allegations were similar to Van Eerden's.  Fink alleged he lived in Middlesex County, Massachusetts from 2014 through 2018, and Palm Beach County, Florida after that; he had never lived in Texas; he interacted with Monkedia only in a representative capacity for Sevenly; all communications between himself and Monkedia were made by email when Fink was in Florida; he never went to Texas to meet with Monkedia representatives; and he did not own property in Texas and did not have an office or an agent in Texas.  Fink's allegations relating to Sevenly and Monkedia's relationship were the same as Van Eerden's.

–4–

Sevenly alleged in its special appearance that it was a North Carolina LLC with principal office in Rockingham County, North Carolina; it had no office or registered agent in Texas; all communications between Sevenly's managers or members and Monkedia occurred by telephone call or email exchange when Sevenly representatives were in North Carolina; Sevenly did not own property in Texas; the relationship between Monkedia and Sevenly began in 2016 when Monkedia began providing Facebook marketing services for what was then a California corporation, Sevenly, Inc.; it did not possess a written contract with Monkedia for the Facebook marketing allegedly provided by Monkedia; the balance of the note was a "disputed past due balance [Monkedia] claim[ed] it was due for marketing services"; Sevenly's record books were kept by a North Carolina resident; and after a miscommunication internal to Sevenly, it lost its corporate charter, but effective November 21, 2021, Sevenly was reinstated by the North Carolina Secretary of State.

Monkedia filed a response to the three special appearances on January 19, 2022. Monkedia alleged that the parties "engaged in negotiations related to terms and conditions" in the note and then executed the note with a Texas choice of law provision. Monkedia alleged Sevenly was "an e-commerce retailer that sells apparel and accessories for nonprofit organizations through its online platform" and does business "across the United States, including Texas." Monkedia argued it

was "clear that the parties are bound by Texas law and Sevenly engaged in doing business in Texas," and Sevenly's special appearance should therefore be denied.

Monkedia included with its response a declaration from the vice president of Monkedia, Brandon Roberts. Roberts stated he was aware of the relationship between Monkedia and Sevenly. Among other things, Roberts declared that the business relationship between Monkedia and Sevenly "extends back to approximately the beginning of 2016" and continued into 2020. Monkedia's marketing services for Sevenly "were conducted in Texas," all payments between the two parties "were transmitted to Texas," and all communications between them "were conducted to and from Texas." Monkedia also attached several email exchanges to their response. Generally, those emails related to late or missed payments from Sevenly to Monkedia, and in one email, Van Eerden attached the executed promissory note "with the changes requested from [Monkedia's] counsel." Van Eerden stated in the email that he was unable to enter into a personal guaranty.

On January 26, 2022, after a hearing, the trial court denied the three special appearances. This appeal followed.

## II. Discussion

Appellants argue in their first issue that, because Van Eerden and Fink had no individual contacts with Texas apart from their work for Sevenly, jurisdiction over them is improper. Monkedia concedes this issue. Second, appellants argue

Sevenly conducted no purposeful activity in Texas and thus did not have minimum contacts with the state. Third, appellants argue the court could not have had general jurisdiction over Sevenly because it did not have continuous and systematic contacts with Texas.[2] Fourth, they argue jurisdiction over Sevenly would offend traditional notions of fair play and substantial justice.

*Applicable law*

Texas courts may exercise personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). The long-arm statute is satisfied by a defendant who "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state" or "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042. Under this statute, the plaintiff has the initial burden to plead allegations sufficient to confer jurisdiction. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). Upon filing a special appearance, the nonresident defendant assumes the burden to negate all the bases of personal jurisdiction alleged by the plaintiff. *Id*. The defendant can

---

[2] Monkedia relied only on specific jurisdiction in its argument in the trial court and now on appeal; accordingly, we address only specific jurisdiction in this opinion, and we do not reach appellants' third issue. *See Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 9 (Tex. 2021) (considering only specific jurisdiction when no party argued that general jurisdiction existed).

negate jurisdiction on either a factual or legal basis. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations[,]" which the plaintiff can then respond to with its own evidence affirming its allegations. *Id.* "Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction[.]" *Id.*

A court must decide a special appearance "on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3). "The text of a response to a special appearance (as opposed to evidentiary attachments to a response) does not fall into any of these categories. It is not a pleading." *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 128 (Tex. App.—Dallas 2021, no pet.) (en banc). Thus, "the plaintiff must meet its initial burden on a special appearance by pleading, *in its petition*, sufficient allegations to invoke jurisdiction under the Texas long-arm statute." *Id.* at 129. The plaintiff's response to the special appearance may contain evidence supporting the petition's jurisdictional allegations, but that evidence must be consistent with the allegations in the petition. *Id.*

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Bell*, 549 S.W.3d at 558. When, as

here, the trial court did not issue findings of fact and conclusions of law, all relevant facts that are necessary to support the judgment and supported by evidence are implied. *Id*.

Federal due process requirements limit a state's power to assert personal jurisdiction over a nonresident defendant: personal jurisdiction is proper only when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). "Under the minimum contacts analysis, we must determine whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Guardian Royal Exch. Assur., Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). This "purposeful availment" inquiry has three parts: (1) only the defendant's contacts with the forum are relevant; (2) the contacts must be purposeful—not random, fortuitous, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Moki Mac River Expeditions*, 221 S.W.3d at 575.

A nonresident's contacts with a forum may give rise to two types of personal jurisdiction. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). General jurisdiction, which is not raised here, is present when a defendant's affiliations with the forum are so continuous and systemic as to render it

"essentially at home in the forum State." *Luciano v. SprayFoamPolymers.com*, LLC, 625 S.W.3d 1, 8 (Tex. 2021). Specific jurisdiction arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). If a defendant has deliberately engaged in significant activities within a forum, it has availed itself of the privilege of conducting business there. *Luciano*, 625 S.W.3d at 9 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)). Because such activities enjoy the benefits and protections of the forum's laws, it is reasonable to require the defendant to submit to the burdens of litigation in that forum. *Id*.

Minimum contacts are not necessarily established merely by contracting with a Texas company and submitting payments to its office in Texas. *See U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex. 1977). A contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King Corp.*, 471 U.S. at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 317 (1943)). Therefore, we must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[,]" in determining whether a defendant has minimum contacts with the forum. *Id*. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In applying the above principles, the courts of appeals of this state have generally found a nonresident defendant purposefully avails itself of this forum when it contracts with a Texas resident as a result of its solicitation of the Texas resident. In *Mungas v. Rishikof*, No. 01-16-00809-CV, 2017 WL 1488137, at *1 (Tex. App.—Houston [1st Dist.] Apr. 25, 2017, no pet.), a California resident solicited a resident of Texas for a $75,000 loan in order to secure funds to continue operating his business in California. The two parties agreed and prepared a promissory note, which stated the defendant promised to pay the plaintiff the amount loaned "from time to time outstanding until paid in full." *Id*. The note did not provide where payment was to be made, nor did it specify the governing law or any forum choice. *Id*. The plaintiff wired the loan proceeds from his bank in Texas to the defendant's bank in California. *Id*. Subsequently, the defendant did not make any payments under the promissory note, and the plaintiff filed suit. *Id*.

The court of appeals concluded the trial court correctly denied the defendant's special appearance because the defendant "purposefully availed himself of the privilege of conducting activities in Texas by soliciting [the plaintiff] for the loan." *Id*. at *4. The solicitation was the defendant's "own action," he reached out to the plaintiff purposefully, and in doing so he sought some benefit, advantage, or profit. *Id*.

–11–

The court of appeals rejected the defendant's argument that he "merely" contracted with a Texas resident—which, he argued, was not sufficient—because the contacts "[did] not merely show that he contracted with a Texas resident; instead, they show that he contracted with a Texas resident as a result of his solicitation of the Texas resident." *Id.* at \*4; *see also N. Coast Commercial Roofing Sys., Inc. v. RMAX, Inc.*, 130 S.W.3d 491, 495 (Tex. App.—Dallas 2004, no pet.) (observing that neither "contracting with a Texas company and requiring payment in Texas" nor a Texas choice of law provision alone necessarily establishes sufficient minimum contacts, but concluding those facts "combined with evidence that [the nonresident defendant] purchased the goods by soliciting and obtaining credit from [the plaintiff's] Texas office" were sufficient to show purposeful availment); *Bissbort v. Wright Printing & Pub. Co.*, 801 S.W.2d 588, 589 (Tex. App.—Fort Worth 1990, no writ) (in suit for nonpayment under a contract, defendant "purposefully acted or consummated a transaction in Texas in initiating negotiations with its telephone call to [plaintiff], by executing and returning to Texas a contract requiring it to make payment in Texas and by wiring the $51,230.00 to [plaintiff's] account with a bank in Texas"); *but see KC Smash 01, LLC v. Gerdes, Hendrichson, Ltd., L.L.P.*, 384 S.W.3d 389, 392 (Tex. App.—Dallas 2012, no pet.) (finding no purposeful availment, despite the fact that "[nonresident defendant] intentionally sought out [plaintiff] in Texas," in suit for

–12–

defendant's failure to pay for architectural services performed by plaintiff in Texas for the benefit of defendant's businesses in Kansas).

When the solicitation runs the other way and the plaintiff solicits business with the nonresident defendant, we have concluded there was no specific jurisdiction over the nonresident defendant, even though the defendant made payments to Texas under a contract that includes a Texas choice of law provision. *See Internet Advert. Group, Inc. v. Accudata, Inc.*, 301 S.W.3d 383, 387 (Tex. App.—Dallas 2009, no pet.). Similarly, when the record is silent as to which party solicited the other's business, courts have found the defendant did not purposefully avail itself of the forum. *See Pillai v. Pillai*, No. 07-14-00379-CV, 2015 WL 1221394, at *1–3 (Tex. App.—Amarillo Mar. 16, 2015, no pet.) (mem. op.) (finding no specific jurisdiction when plaintiff loaned nonresident defendant $200,000, the record was silent as to which party solicited the transaction, and the parties executed a promissory note, including a Texas choice of law provision, under which defendant was to make repayments in Amarillo).

*Analysis*

On the record before us, we cannot conclude Sevenly has purposefully availed itself of conducting activities in Texas. In sum, Sevenly's possible contacts with Texas include a business relationship with a Texas company, Monkedia, in which the latter provided Sevenly with Facebook marketing services; an obligation under a promissory note to pay Monkedia in monthly installments at

–13–

Monkedia's offices in Irving for money owed to Monkedia for its past services; a Texas choice of law provision in the promissory note; and phone and email communications between Sevenly's agents in North Carolina and Monkedia in Texas.

Although Monkedia contends it performed its marketing services for Sevenly from Texas, Monkedia's activities do not count as Sevenly's contacts. *See KC Smash 01, LLC*, 384 S.W.3d at 394 (observing that plaintiff performing its end of a contract in Texas is a "unilateral action by [plaintiff], not [nonresident defendant], and it cannot be considered a contact by [defendant] with Texas"). Sevenly's side of the relationship consisted solely of submitting payments to Monkedia in Texas under a contract that included a Texas choice of law provision. We have previously concluded that such contacts without more are not enough to constitute purposeful availment. *See Internet Advert. Group, Inc.*, 301 S.W.3d at 387; *Pillai*, No. 07-14-00379-CV, 2015 WL 1221394, at *1–3; *see also Klug v. Wickert*, No. 05-14-00080-CV, 2015 WL 4338424, at *4 (Tex. App.—Dallas July 16, 2015, no pet.) (mem. op.) (concluding that an agreement to make payments in the forum state does not weigh heavily in the "calculus of contacts"). Moreover, Sevenly's communications from North Carolina with Monkedia's agents in Texas are not significant in our analysis. *See KC Smash 01, LLC*, 384 S.W.3d at 393 (concluding "telephone and email communications and the sending of payments to [Texas plaintiff]" do not constitute contacts demonstrating purposeful availment).

–14–

Absent in the record before us is any allegation or evidence showing that Sevenly solicited Monkedia's business or that Monkedia was engaged by Sevenly to market Sevenly's products to Texas customers. All that is before us is Sevenly's allegation that Monkedia demanded that Sevenly execute the promissory note. Given this, we cannot conclude Sevenly purposefully availed itself of the privilege of conducting activities within Texas, invoking the benefits and protections of its laws. Instead, considering these contacts in their totality, Monkedia could have "been based anywhere in the world," and Sevenly "would presumably have interacted with it in the same way as [Sevenly] did with" it here. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 74–75 (Tex. 2016). Accordingly, we conclude the trial court erred by denying Sevenly's special appearance. We sustain appellants' second issue, and we need not reach their fourth issue relating to fair play and substantial justice, given that we conclude specific jurisdiction does not exist in this case.

As noted above, Monkedia concedes the trial court erred by denying Van Eerden's and Fink's special appearances. We have independently reviewed the record, and we agree. Monkedia made no allegations Van Eerden or Fink had contacts with this forum beyond those alleged through their work at Sevenly, and it made no allegations that Van Eerden or Fink committed any torts in Texas. Roberts alleged in his affidavit that Van Eerden "represented himself as a managing member of Sevenly when he executed the Note on Sevenly's behalf,"

–15–

and Fink was "also a managing member of Sevenly and was involved in negotiating and approving the terms and conditions of the Note." Roberts alleged that "Fink was involved in the making of the Note, ultimately approved the terms and conditions prior to execution by Van Eerden, and held the responsibility of confirming payments had been made to Monkedia under the Note." Setting aside the question of the application of the fiduciary shield doctrine, these contacts do not constitute purposeful availment for the same reason they do not as applied to Sevenly. *Cf. Olympia Cap. Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 418 (Tex. App.—Dallas 2008, no pet.) ("The existence of a contract between the nonresident defendant and a resident of the forum and engaging in communications related to the execution and performance of that contract are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."). We sustain appellants' first issue.

## Conclusion

We reverse the trial court's order and render judgment dismissing Monkedia's claims against Sevenly, Van Eerden, and Fink for lack of jurisdiction.

/Ken Molberg/
KEN MOLBERG
JUSTICE

220096F.P05

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SEVENLY OUTFITTERS, LLC,
JAMES VAN EERDEN AND
MATTHEW FINK, Appellants

No. 05-22-00096-CV     V.

MONKEDIA, LLC, Appellee

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-05779-
2021.
Opinion delivered by Justice Molberg.
Justices Partida-Kipness and Carlyle
participating.

In accordance with this Court's opinion of this date, the order of the trial court denying appellants' special appearances is **REVERSED** and judgment is **RENDERED** granting appellants' special appearances and dismissing Monkedia, LLC's claims against Sevenly Outfitters, LLC, James Van Eerden, and Matthew Fink.

It is **ORDERED** that appellants SEVENLY OUTFITTERS, LLC, JAMES VAN EERDEN AND MATTHEW FINK recover their costs of this appeal from appellee MONKEDIA, LLC.

Judgment entered this 19th day of April 2023.